MARY GNAPINSKY, PLAINTIFF-APPELLANT, v. SOPHIE GOLDYN AND EVA HAMOT, DEFENDANTS-RESPONDENTS.

Argued December 10, 1956—Decided January 21, 1957.

244

*Mr. Herman B. Packer* argued the cause for appellant (*Messrs. Feder & Rinzler,* attorneys; *Mr. Joseph A. Feder,* of counsel; *Mr. Herman B. Packer,* on the brief).

*Mr. Morris Pashman* argued the cause for respondent Sophie Goldyn (*Mr. Joseph A. Banas, Jr.,* on the brief).

No appearance for respondent Eva Hamot.

The opinion of the court was delivered by

WEINTRAUB, J. Plaintiff sued for slander. The case was tried in the Passaic County District Court without a jury. At the close of plaintiff's case, motions for judgment of dismissal were granted.

Plaintiff appealed to the Appellate Division. The statement of proceedings (*R. R.* 1:6–3) was settled by the trial judge on June 1, 1955. Plaintiff's brief was due 30 days thereafter, *R. R.* 1:7–12(*a*) and 2:7–3, but plaintiff did not file it or seek an extension of time. On August 16 defendants moved to dismiss the appeal for failure to comply with the cited rule, and in response plaintiff filed her brief on August 24, five days before the argument of the motion. The Appellate Division dismissed the appeal, and on plaintiff's petition we granted certification to review the order of dismissal.

Upon the argument of the appeal we decided to hear the meritorious issues as well, to the end that if the order of the Appellate Division be reversed, there would be no further delay in this matter. Additional briefs were filed and argument had.

## I.

█ That plaintiff failed to comply with the rules is of course evident, and the reasons given are hardly moving. Where a legitimate basis for further time exists, the proper course is a seasonable application for an extension, and no explanation is advanced for plaintiff's failure to seek one.

█ The rules of court are designed to expedite litigation and are intended for the equal benefit of all parties. The failure of one side to comply precipitates motions which not only consume the time of the courts and delay justice to other

litigants, but as well waste the time of counsel which could be devoted with profit to other matters. There are situations in which relief from the prescribed timetable is warranted, and authority is provided for relaxation of the rule in appropriate cases. *R. R.* 1:27A and 1:27B. But the discretion is to be exercised by the courts and not by the unilateral decision of counsel for one of the parties. By reason of counsel's infraction, defendants were unfairly put to the burden of a motion to dismiss and the subsequent proceedings before us with reference to the motion, none of which has contributed to a solution of the issues which interest the clients.

█ Although we agree the reasons advanced by plaintiff for failure to comply with the rule do not attract sympathetic response and are mindful of the needless trouble to the other parties, yet we are reluctant to approve the dismissal of an appeal where the brief was in fact filed in response to the motion and before argument thereon. The effect of a dismissal is to impose too great a penalty upon a litigant who doubtless was personally blameless. There may be situations in which dismissal is the necessary sanction, but where other measures will fairly adjust such *mesne* controversies a dismissal should not be ordered. Hence we feel constrained to reverse the order of dismissal without costs in this court in favor of plaintiff, and indeed with costs in favor of defendant Goldyn, both in the Appellate Division and here, with respect to the motion to dismiss and the review of the order of dismissal.

## II.

█ This brings us to the merits. There was no stenographic record below and hence the validity of the judgments must be tested on the basis of the statement of proceedings settled by the trial judge.

In the statement we find plaintiff's case against defendant Hamot consisted of this: Plaintiff had known Mrs. Hamot for 25 years. They were co-employed at a handkerchief

factory, where on July 13, 1954 plaintiff, while working at a bench ten feet from Mrs. Hamot, heard her say to a Mrs. Kulik, both of whom had their backs to plaintiff:

"Where does Mary have any brains; she has her own man, and she had a baby with another man."

Plaintiff said she heard Mrs. Hamot add that she knows this from the co-defendant Goldyn, and that Mrs. Kulik said something which plaintiff did not catch.

Plaintiff did not produce Mrs. Kulik and hence we do not know from her to whom she understood the statement applied.

As to defendant Goldyn, plaintiff testified she had known defendant for 25 or 27 years; that she had not talked with defendant for 16 years except for one occasion about two years before trial and again in October 1953, when she "told Mrs. Goldyn not to talk about her" (about what, we are not informed) and that Mrs. Goldyn denied talking about her. Plaintiff said that on July 16, 1954, about 11:30 P. M., while on the porch of the house in which she lived, she overheard defendant say to a Mrs. Puzio, both being on the sidewalk and unaware that plaintiff was listening:

"Mary said she didn't have a baby with another man. If she was that way, she would call him over and he would say it's the truth."

Mrs. Puzio was not called as a witness and hence we do not know what she understood by the quoted statement or to whom she understood it to relate.

Plaintiff further testified that she has been married for 24 years; that one child was born of the marriage; that two years later she was pregnant and in the third month she and her husband arranged for an abortion which was had.

The trial judge granted the motions on the ground that there was no evidence of publication as to plaintiff, that is, that Mrs. Kulik or Mrs. Puzio understood the statements to refer to plaintiff, and as to defendant Goldyn, on the further ground that the statement attributed to her is "vague,

unintelligible and difficult of construction, and hence, it fails to spell out a case of slander."

█ Defendant Hamot has not responded to the appeal, but of course her interests are nonetheless before us. *Peschek v. Teissere*, 30 *N. J. Super.* 248 (*App. Div.* 1954). Defendant Goldyn urges a number of bases to uphold the judgment, of which only two require consideration: (1) that an imputation of unchastity is not actionable *per se*, and (2) there was no evidence that the alleged slander related to plaintiff.

## III.

It is not clear that there is necessarily before us the question whether a slander imputing unchastity is actionable *per se*. The statement of proceedings informs us that "all proofs of the plaintiff and her husband directed towards damages are left out in this Statement" because of the grounds upon which the judgments were based. We cannot tell whether plaintiff proved the special damages which would make the proffered issue academic. *Prosser, The Law of Torts* (2d ed. 1955), § 93, p. 593. Nonetheless, since plaintiff did not suggest before us that the proof was of a nature to obviate the issue, we will deal with it.

█ The law of defamation is burdened with quaint distinctions of historical genesis. With respect to slander, as distinguished from libel, there are three categories of false statements which are generally deemed to be actionable *per se*, that is, without charge or proof of special damages, namely, words which (1) charge commission of a crime (with some variations with respect to the definition of "crime" for this purpose); (2) impute certain loathsome diseases and (3) affect a person in his business, trade, profession or office. 1 *Odgers, The Law of Libel and Slander* (2d Eng. ed. 1887), p. *53; see *Johnson v. Shields*, 25 *N. J. L.* 116 (*Sup. Ct.* 1855). To these categories, Prosser adds a fourth, "In some jurisdictions, the imputation of unchastity to a woman," which he observes is of statutory origin in some places, *op. cit., supra*, § 93, pp. 584, 592. The *Restatement, Torts*

(1938) adds that further category without qualification as to statutory source and notes additionally that a charge of unchastity may be remediable as well as an imputation of crime within the first category. *Sections* 570 and 574, *comment d.*

Prosser summarizes the immediate subject, *op. cit., supra,* § 93, *p.* 592:

"4. *Unchastity.* An accusation of unchastity was at first regarded as purely a 'spiritual matter'—that is, a sin—and so was not actionable without proof of 'temporal' damage, such as the loss of a particular marriage. This remained the law of England until 1891, when it was remedied, as to the female sex, by the Slander of Women Act. Similar statutory changes of the common law rule have been made in a number of American states, and several courts have accomplished much the same result by holding that an imputation of unchastity to either sex is equivalent to a charge of the crime of adultery or fornication, which involves an infamous punishment or moral turpitude. In some jurisdictions the older rule still prevails. Most courts, however, have rebelled at the reproach to the law involved in such a result, and have held that an oral imputation of unchastity to a woman is actionable without proof of damage, irrespective of whether it charges a crime."

We do not have a statute making a slanderous charge of unchastity in a woman actionable *per se,* but the rule has long obtained here as decisional law.

In *Smith v. Minor,* 1 *N. J. L.* 16, 19 (*Sup. Ct.* 1790), the slander consisted of a charge that an unmarried girl was with child. Defendant urged the words did not impute commission of an indictable crime and hence were not actionable *per se.* Acknowledging the common law rule that where the offense charged is "in its nature merely spiritual, and cognizable only by ecclesiastical tribunals" (1 *N. J. L.,* at *page* 26) special damages must be shown, and that simple fornication then fell within that rule, the court concluded that under a statute fornication attended with issue was indictable and hence defendant's objection was met. The court went further 1 *N. J. L.,* at *page* 27:

"Admitting this to be otherwise, yet an action will lie for *spiritual* defamation in New Jersey, because we have no ecclesiastical courts to punish the offence. The common law of England is indeed

stable in its principles, but so flexible, as in its application readily to meet every new case that may arise, and to provide a redress for every injury that may be inflicted. The reason of the English cases is inapplicable here, and the decisions themselves should not, therefore, be regarded with the same technical precision, and applied with the same unbending exactness. * * *"

In *Shaw v. Bender,* 90 *N. J. L.* 147 (*E. & A.* 1917), it was unanimously held that a slander of a woman charging adultery or fornication is actionable *per se* since crime was thereby imputed. The same holding, and upon the same thesis, was made in *Brightman v. Davies,* 3 *N. J. Misc.* 113, 127 *A.* 327 (*Sup. Ct.* 1925), and *Hand v. Hand,* 23 *N. J. Misc.* 118, 41 *A.* 2d 270 (*Cir. Ct.* 1945) (involving apparently both slander and libel).

 The law of defamation seeks to protect the individual's interest in reputation. Society holds high a woman's reputation for chastity, and the likelihood of harm when it is impugned is so evident that special damages should not be required. We prefer to place our holding on this basis, without recourse to the equally sufficient ground that an indictable crime punishable by imprisonment is charged, *N. J. S.* 2A:88–1, as to which further basis it may be noted that it is of no consequence that the crime imputed is of such antiquity that prosecution is barred by the statute of limitations. *Brightman v. Davies, supra* (3 *N. J. Misc.,* at page 114); *Prosser, op. cit., supra,* § 93, *p.* 589; *Restatement, Torts,* § 571, *comment b* (1938).

### IV.

 Is the evidence sufficient for a finding that the slander related to plaintiff? Plaintiff, of course, was entitled to the benefit of every legitimate inference on the motions, *Melone v. Jersey Central Power & Light Co.,* 18 *N. J.* 163, 170 (1955), but inferences must be rooted in evidence.

 Since the law of defamation seeks to secure reputation, there must be a communication to a third person. Without this essential element, neither libel nor slander is shown. *Prosser, op. cit., supra,* § 94, *pp.* 596–7; *Restate-*

*ment, Torts,* § 577, *comments a* and *b* (1938). It follows that it must appear that the third person understood the communication to relate to plaintiff. 33 *Am. Jur., Libel and Slander,* § 89, *p.* 102; *Annotation,* 91 *A. L. R.* 1161, 1171 (1934); *Prosser, op. cit., supra,* § 92, *p.* 583; *Restatement, Torts,* § 564 (1938).

As pointed out above, neither Mrs. Kulik nor Mrs. Puzio testified. We do not suggest that in all cases the hearer's testimony must be adduced. The identification of the person defamed may be so evident and the extent of publication such as to warrant an inference that the published statement was understood by at least some third person to bear upon plaintiff. But where, as here, the statement refers merely to "Mary," more than mere publication must be proved to warrant the inference that the listener in fact understood plaintiff was meant.

It is not clear whether plaintiff testified she understood she was intended, but assuming she did, and apart from the question of the capacity of her testimony to evidence what Mrs. Kulik and Mrs. Puzio understood, we find no explanation as to why even she thought the shoe was meant to fit her. The circumstances that she (1) had borne a child, (2) had undergone an abortion, and (3) as to Mrs. Goldyn, had asked her not to talk about her, as to something not disclosed, and that Mrs. Goldyn denied she had, do not serve to suggest that she was intended. Although extrinsic circumstances may serve to demonstrate the identity of the person defamed, none of the circumstances mentioned can have that force. There was no evidence that either defendant knew of the abortion or that the paternity of the child had been questioned by anyone to the knowledge of defendants, or by either defendant herself at any prior time, or that either Mrs. Kulik or Mrs. Puzio was aware of any such circumstance. The additional facts that plaintiff was a co-worker of Mrs. Hamot and lived in the house in front of which Mrs. Goldyn uttered the statement are much too scant to evidence the required fact as against the defendant concerned.

A number of cases have been cited. None are sufficiently close to warrant discussion beyond some general statements differentiating them.

We are not here concerned with the question whether one not intended may nonetheless be slandered where he is so described that listeners or readers may reasonably believe he in fact was intended. *Garrison v. Newark Call Printing & Pub. Co.,* 87 *N. J. L.* 217 (*E. & A.* 1914). The problem here is not whether Mrs. Kulik or Mrs. Puzio could reasonably have understood that plaintiff was meant. Rather there is no evidence that either did so understand.

Nor are we aided by cases dealing with whether defamation of a class is actionable by a member of the class. Nor can precedent be found in cases where the person intended can be identified by a process of elimination upon collateral circumstances, as for example *Ramharter v. Olson,* 26 *S. D.* 499, 128 *N. W.* 806 (*Sup. Ct.* 1910). Here the slander related to some one named Mary. There was no evidence that plaintiff was the only Mary within the acquaintance or range of gossip of defendants and their respective listeners, nor proof which would exclude such other Marys and leave plaintiff as the target of the remarks.

Thus nothing within the statements themselves point to plaintiff, and nothing in the record *dehors* the statements has that force and, more importantly, nothing within or beyond the statements serves to establish the crucial fact, that either Mrs. Kulik or Mrs. Puzio so understood them. Hence plaintiff did not meet the rule, as stated in *Restatement, Torts,* § 564, *comment b* (1938), that

"* * * If the applicability of the defamatory matter to the plaintiff depends upon extrinsic circumstances, it must appear that some person who saw or read it was familiar with the circumstances and reasonably believed that it referred to the plaintiff."

The failure in this case to call the listeners left the matter in the realm of speculation. The trial court's determination that the evidence was legally insufficient on the aspect here considered seems to us to be correct. *Cf. Dressler v. Mayer,* 22 *N. J. Super.* 129 (*App. Div.* 1952).

The judgments of the district court are accordingly affirmed, with costs in favor of defendant Goldyn.

VANDERBILT, C. J. (dissenting). I disagree with the majority on two grounds.

1. I fear that the opinion of the majority will lead to a weakening, and if pursued generally, to a breakdown of the orderly administration of appellate proceedings.

The plaintiff appealed from the judgment of dismissal granted to the defendants at the end of the plaintiff's case in the district court. The defendant Goldyn moved to dismiss this appeal on the ground that the notice of appeal to the Appellate Division was not filed in proper time nor was the statement in lieu of a stenographic record served within the time set by the rules. The Appellate Division denied this motion and in doing so extended the time of the plaintiff to file her notice of appeal and statement. The proceedings were perfected and the statement in lieu of a record was settled on June 1, 1955. The plaintiff's brief was due within 30 days of that date, *R. R.* 1:7–12(a), 2:7–3, but was not served or filed within that time. Some 76 days thereafter the defendant again moved to dismiss the appeal. The plaintiff's brief was finally served eight days later, which was 54 days out of time.

The only explanation given for such conduct by counsel for the plaintiff was that extensive research dating back into the early 19th Century, coupled with the unusually hot summer of 1955, delayed him beyond the time provided by the rules. His brief, however, reveals no such extensive efforts on his part and his explanation of his delay seems quite fanciful. No explanation was given for his failure to seek further relaxation of the rules.

Counsel for the plaintiff in this case has very obviously shown that he holds himself above the rules promulgated by this court to govern appeals. He was fortunate enough to escape difficulty as a result of his initial disregard of the rules; he should have emerged a wiser man as a result of his experience. Instead, he chose to further disregard the rules by failing to file the appellant's brief within the

256

time allotted, by neglecting to seek relief voluntarily under
*R. R.* 1:27*A* and 1:27*B* from the plight in which he alleges
he found himself, and by putting the respondents' counsel
to the added and unnecessary burden of having to again
move to dismiss the appeal before filing his brief 54 days
out of time. Such conduct by plaintiff's counsel is clearly
contemptuous and should not be tolerated or dealt with
passively.

I would reprimand counsel for his utter disregard of the
rules of court as to which he is charged with knowledge.
No attorney should get the idea that no matter how com-
placent or negligent he is with respect to abiding by the
rules, neither he nor his client will suffer because the court
will pull the chestnuts out of the fire and for the sake of
justice to a personally blameless client permit a consideration
of the matter on the merits.

I would also recommend that the Appellate Division adopt
as a general policy the practice used by Part B when the
occasion requires it and fine attorneys who are guilty of
contemptuous violations of the rules of court resulting in
the delay of the judicial process on appeal instead of punish-
ing their innocent clients.

2. On the merits, I cannot agree that there is not suf-
ficient proof that the persons to whom the defamatory
remarks were made did not understand that they related
to the plaintiff. The references to "Mary" made by the
defendant Hamot when the plaintiff was at her workbench
and by the defendant Goldyn when she passed the plain-
tiff's house is clear proof to me that the taunts of these
malicious gossip mongers referred to "Mary," the plaintiff
here, in the absence of any proof by them that there was
another "Mary" to whom their slander was directed.

I would reverse and remand the matter for a new trial.

*For affirmance of District Court and reversal of Appellate
Division*—Justices Heher, Oliphant, Wachenfeld, Bur-
ling, Jacobs and Weintraub—6.

*For reversal*—Chief Justice Vanderbilt—1.