169 N.J. Super. 55 (1979)
404 A.2d 309
TENBY CHASE APARTMENTS, A PARTNERSHIP; AND MILLSIDE MANOR, A PARTNERSHIP, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY WATER COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 8, 1979.
Decided May 31, 1979.
*56 Before Judges HALPERN, ARD and ANTELL.
Mr. Morris Brown argued the cause for appellant (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. Robert M. Dangel argued the cause for both respondents (Messrs. Schulze, Wood, Tapper & Dangel, attorneys).
The opinion of the court was delivered by HALPERN, P.J.A.D.
By leave granted on September 1, 1978 defendant appeals from an order dated June 21, 1978 whereby the court refused to vacate its order of October 28, 1977 suppressing defendant's answers and striking its counterclaim *57 for failing to answer plaintiffs' interrogatories and request for admissions within the time prescribed by the rules of court; it also appeals from an order dated August 4, 1978 denying its application to reconsider the June 21, 1978 order.
A brief review of the nature of the issues involved, and a chronology of the essentially undisputed procedural facts, will be helpful to a resolution of this appeal. On April 29, 1977 plaintiffs, the owners of garden apartments, filed this multicount Chancery Division complaint against defendant charging it with providing impure and unpalatable water, to plaintiffs' damage. Plaintiffs sought compensatory and punitive damages, as well as injunctive relief. In June 1977 defendant answered plaintiffs' complaint by denying liability and sought damages by way of a counterclaim against plaintiff Millside Manor.
On or about June 8, 1977 plaintiffs served a request for admissions on defendant. In July 1977 plaintiffs served interrogatories on defendant. On October 27, 1977, after plaintiffs made many unsuccessful attempts to have defense counsel answer the interrogatories, they obtained and filed an order pursuant to R. 4:23-5 striking defendant's defenses and counterclaim. On March 16, 1978 defense counsel was served with notice that a hearing to assess damages would be held on March 22, 1978.
At the hearing on March 22, 1978 defense counsel, for reasons which will appear later, made an oral application, without supporting papers, for relaxation of R. 4:23-5(a) pursuant to R. 1:1-2, or for relief under R. 4:50-1(f). At the hearing, the trial judge did the following: (1) he adjourned the hearing to assess damages to April 10, 1978; (2) he granted defense counsel leave to move for relief from his October 28, 1977 order, to be returnable on April 10, 1978, on the conditions that (a) defense counsel serve upon plaintiffs complete answers to the interrogatories and request for admissions by March 29, 1978, and (b) defense counsel pay Robert M. Dangel a fee of $750.
*58 Defense counsel complied with the March 22, 1978 order by forwarding the sum of $750 to Dangel on March 23, 1978; he hand-delivered to plaintiffs' counsel the answers to the interrogatories and the answers to the request for admissions on March 30, 1978. He then moved on April 7, 1978, as directed by the trial judge, for relief from the October 28, 1977 order, and made it returnable on April 10, 1978. The motion was supported by an affidavit of defense counsel as to why his client should be given relief. He also indicated in his affidavit that he had not advised his client of the October 28, 1977 suppression order until after his appearance in court on March 22, 1978. The trial judge, after considering the pleadings and the arguments of counsel, entered an order on June 21, 1978 denying the application.
On July 18, 1978 substituted counsel for defendant moved for a rehearing and reconsideration of the June 21, 1978 order. The motion was supported by additional and more detailed affidavits filed by original defense counsel and his law partner, together with a detailed medical certificate relating to original defense counsel's mental and physical condition during the period in question. On August 4, 1978 the motion was denied. To date, plaintiffs' damages have not been assessed, nor has defendant filed a separate suit as permitted by the trial judge's order to recover on its counterclaim against Millside Manor.
The narrow issue presented is whether the trial judge mistakenly exercised his discretion in denying the relief requested by defendant under R. 1:1-2 or R. 4:50-1(f), or a combination of both rules.
R. 1:1-2 provides:
The rules in Part I through Part VII, inclusive, shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes.
*59 R. 4:50-1(f) provides in relevant part:
On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (f) any other reason justifying relief from the operation of the judgment or order.
We have not set out subsections (a) through (e) of R. 4:50-1 because in our opinion none of them is applicable to the relief claimed by defendant. See 7 Moore's Federal Practice, § 60.27(1).
The obvious purpose behind both rules is to give courts the authority, on equitable grounds, to avoid an unjust result in any given case. This philosophy was best expressed by Chief Justice Weintraub in Gnapinsky v. Goldyn, 23 N.J. 243 (1957):
Although we agree the reasons advanced by plaintiff for failure to comply with the rule do not attract sympathetic response and are mindful of the needless trouble to the other parties, yet we are reluctant to approve the dismissal of an appeal where the brief was in fact filed in response to the motion and before argument thereon. The effect of a dismissal is to impose too great a penalty upon a litigant who doubtless was personally blameless. There may be situations in which dismissal is the necessary sanction, but where other measures will fairly adjust such mesne controversies a dismissal should not be ordered. [at 248]
The Gnapinsky approach was expanded in Paxton v. Misiuk, 34 N.J. 453 (1961), where the court said:
We add some admonitions about the mounting failures to comply with the rules. We repeat that if it is at all possible, the litigant should not be burdened with his attorney's derelictions. An appropriate step is to impose a counsel fee payable by the offending attorney personally to his adversary, with a direction in the order for filing of proof of payment within a prescribed time, and with the proviso that if the adversary declines to accept payment, as is often the case, payment shall be made to the clerk of the court. [at 458]
In Manning Engineering, Inc. v. Hudson Cty. Park Comm'n, 74 N.J. 113 (1977), the court was confronted with *60 an application to reopen a judgment two years and seven months after its entry. In vacating the judgment Justice Pashman noted:
We are satisfied that authority exists under R. 4:50-1 for reopening the judgment in this case. Although defendants applied for this relief two years and seven months after the trial court rendered a judgment in favor of plaintiff, the interests at stake and the truly extraordinary nature of the circumstances presented convince us that relief under the rule is appropriate.
R. 4:50-1 allows a court to "relieve a party or his legal representative from a final judgment, order or proceeding" whenever necessary to prevent a manifest denial of justice. The rule is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case. Hodgson v. Applegate, 31 N.J. 29, 43 (1959); Scheck v. Houdaille Construction Materials, Inc., 121 N.J. Super. 335, 345 (Law Div. 1972). [at 120-121]
See also, Maurio v. Mereck Constr. Co., Inc., 162 N.J. Super. 566, 570 (App. Div. 1978); Automatic Washer Service v. Brunswick Burl., Inc., 153 N.J. Super. 343 (App. Div. 1977).
With the above principles in mind we turn to the substantially uncontradicted facts in the instant case to see whether there are exceptional circumstances present warranting the granting of relief to defendant in the face of defendant's admitted breach of R. 4:23-1 et seq.
(1) The suit is against a public utility. It involves issues of public importance relating to the potability of water furnished to the public, and damage to plaintiffs' buildings and appurtenances. An adversary proceeding on the substantial factual and legal issues involved as preferable over one where only plaintiffs' version is heard and considered.
(2) Original defense counsel in charge of this case is a partner in a long established law firm with an impeccable professional reputation. During the period in question he was responsible for a number of important public interest cases, as detailed in the record. At the same time, because of a severe heart attack suffered by one of his law partners, *61 who was not only a colleague but a close friend, he was compelled to take over and be responsible for his partner's considerable case load. To compound his problems, he was embroiled in bitter and difficult marital problems, and he had physical ailments for which he was being treated by a doctor.
This combination of unusual circumstances caused him to fall behind in his office work, and he foolishly did not seek help from others in his law firm. A fair summary of the medical testimony offered by defendant in support of its request for relief would be that the combination of stressful circumstances confronting its attorney caused him to be so mentally and emotionally upset that he experienced a denial of reality reaction, and was literally incapacitated. The medical proof showed that his reaction was a defensive mechanism which protected him from a psychological collapse.
(3) On March 22, 1978, when the trial judge directed defense counsel to answer the interrogatories and request for admissions, and to pay a counsel fee of $750, he did so within eight days. The answers as served were about five months out of time. It is true that the trial judge did not actually say he would restore defendant's pleadings if counsel complied. The clear inference from the record, however, is that he would do so. We have no explanation of his denial other than the general comment that defense counsel's personal and office problems were insufficient grounds for granting relief in view of the five month delay.
(4) Other than the five-month delay in answering the interrogoraties and request for admissions, and the delay engendered by this appeal, there is nothing in the record to indicate that plaintiffs will be prejudiced in the presentment of their proofs if defendant's request for relief is granted. Our inquiry of counsel on this subject at oral argument failed to reveal any material prejudice resulting to plaintiffs in this regard.
In summary, we do not believe that in view of all the circumstances existing here that defense counsel's failure to *62 comply with R. 4:23-1 et seq. was such as to require the drastic sanction of suppressing defenses and denying a public utility the right to a trial on the merits. As previously indicated, defense counsel admittedly failed to comply with the discovery rules. However, the importance of having the factual and legal issues determined in an adversary proceeding presents a proper case for relaxing the rules of practice in order to subserve their first objective  the accomplishment of substantial justice on the merits. Gnapinsky, supra; James v. Francesco, 61 N.J. 480, 484 (1972). We do not retreat from the holding in Zaccardi v. Becker, 162 N.J. Super. 329 (App. Div. 1978). There we found that counsel's conduct in not seeking relief for 17 months, under the existing circumstances, was deliberate and inexcusable and, therefore, the imposition of sanctions on counsel would be inadequate.
Accordingly, we find that the trial judge mistakenly exercised his discretion in refusing to vacate his order of October 28, 1977 under the power given to him under R. 1:1-2 or R. 4:50-1(f). The order of October 28, 1977 suppressing defendant's defenses and striking its counterclaim is reversed. A counsel fee of $1,500 is imposed upon original defense counsel payable forthwith to plaintiffs' counsel of record. This reversal is conditioned upon the payment of the counsel fee. In the event plaintiffs' counsel refuses to accept payment of the fee, the sum of $1,500 shall be paid to the clerk of this court.
The matter is remanded to the trial court with directions, in view of the lapse of time, to permit the parties to complete discovery if it deems such to be necessary, and to accelerate the trial in order to dispose of the issues involved.