**Sol KRAMER, Plaintiff,**

v.

**MONOGRAM MODELS, INC., Kidde Recreation Products, Inc., The Ertl Company and John Does 1 through 20, Defendants.**

**Robert PALESTRI, Plaintiff,**

v.

**MONOGRAM MODELS, INC., Kidde Recreation Products, Inc., The Ertl Company and John Does 1 through 20, Defendants.**

Civ. A. Nos. 87–3751, 87–4030.

United States District Court,
D. New Jersey.

May 31, 1988.

Podvey, Sachs, Meanor & Catenacci, P.C., Newark, N.J. by Thomas S. Doerr, for plaintiff Sol Kramer.

Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, P.C., Roseland, N.J. by Kenneth H. Lehn, for plaintiff Robert Palestri.

Lampf, Lipkind, Prupis & Petigrow, P.C., West Orange, N.J. by Diane Orlando, for defendants Monogram Models, Inc., Kidde Recreation Products, Inc., and The Ertl Co.

## OPINION

BARRY, District Judge.

Plaintiffs in this consolidated action bring suits against defendants alleging defamation, breach of contract, and intentional infliction of emotional distress. Defendants now move for summary judgment. For the reasons that follow, that motion will be granted.

Plaintiffs Palestri and Kramer were formally principals in a toy and hobby products distributor known as Kramer Brothers, Inc. A once highly successful business, it filed for bankruptcy in April, 1982. Plaintiffs contend that the company had overstocked goods for the 1981 Christmas season and was unable to pay its bills when sales fell off that year. However, defendants and other creditors who had supplied goods to plaintiffs' company, believed that Palestri and Kramer had deliberately misstated the financial health of the company and in 1984 they filed suits in this district against plaintiffs alleging fraud, negligence and racketeering. After two years of litigation, in April, 1986 the cases were settled and finally dismissed in August, 1986. The parties agreed that the terms of the settlement were to remain confidential.

Approximately one month later, on August 20, 1986, defendants, The ERTL Company and Monogram Models, issued a joint press release to several trade publications. Although the cover letter requested that the statement, because of its "sensitive nature and complexity," be published in its entirety, it was instead excerpted in the September 15, 1986 issue of Toy & Hobby World Weekly Market Report and later in Toy & Hobby World's October monthly magazine. Both excerpts noted the filing of the fraud and racketeering suit which had alleged that Kramer and Palestri had defrauded Monogram and ERTL by "overt misrepresentations and by overordering goods on credit without the intention of paying for them," and the fact of the confidential settlement. The excerpts then quoted the press release's explanation and admonishment that "[ERTL] and Monogram ... had filed their action because they are 'no longer willing to be victimized by manipulation of their customer's businesses ... [nor would they] ... tolerate defaults by [their] customers that are contrived in order to enrich their principals at their expense.'" Plaintiffs then filed these separate actions alleging breach of the settlement agreement, libel, slander, and intentional infliction of emotional distress. Palestri's suit was filed August 21, 1987; Kramer's was filed September 13, 1987.

Defendants now move for summary judgment[1] arguing: 1) that both actions are barred by the statute of limitations, 2) that the statements alleged to be libelous are true, 3) that no action lies for the tort of intentional infliction of emotional distress or for breach of contract, and 4) that service of process on defendant ERTL, in the Palestri action only, is defective.

### The Statute of Limitations

■ In New Jersey,[2] an action for libel or slander must be "commenced within one year next after the publication of the al-

---

1. Where, as in this case, the material facts, as defined by the substantive law applicable to the issues raised by the motion, are not in dispute, and the questions presented are merely questions of law, summary judgment is an appropriate disposition. *Gans v. Mundy*, 762 F.2d 338 (3d Cir.1985), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1986).

2. The parties have assumed that New Jersey law applies to this issue. *See Allen v. Volkswagen of America*, 555 F.2d 361 (3d Cir.1977). This court finds no reason to question that assumption.

leged libel or slander." N.J.S.A. 2A:14–3 (West 1987). This statute of limitations does not speak of the running of the statute as of the day on which the action "accrues" but rather specifies a particular act which triggers when the limitation period begins. Thus, the "discovery rule" does not apply and the sole inquiry before the court is when publication occurred. *Lawrence v. Bauer Publishing Ltd.*, 78 N.J. 371, 374–75, 396 A.2d 569 (1979) (Pashman, J. concurring); *See Presslaff v. Robins*, 168 N.J.Super. 543, 403 A.2d 939 (App.Div. 1979).

■ In the instant case, defendants argue that the last possible date that any of the *defendants* communicated anything concerning the Kramer litigation was August 20, 1986 when Monogram issued the press release. Thus, defendants argue, "publication" occurred at the latest on August 20, 1986 and, therefore, both Kramer's complaint, filed one year and one day later, and Palestri's complaint, filed thereafter, are time-barred. Plaintiffs argue that where the alleged libel was published by the mass media, courts have fixed the date of publication as of the date a periodical "goes on sale or is otherwise released to the public." Pl. Brief in Opp. at 20. Plaintiffs, however, misperceive the application of the so-called "single publication rule."

Prior to the adoption at common law of the "single publication rule," a publisher of mass-produced materials did not enjoy the repose of the statute of limitations because sales subsequent to the initial sale created new causes of action. Accordingly, the rule developed that a plaintiff would have only one cause of action against a mass media publisher with the accrual date deemed to be the date on which the first edition of the publication was circulated to the public. *See generally Zuck v. Interstate Publishing Corp.*, 317 F.2d 727 (2d Cir.1963).

Plaintiffs argue, relying on *Zuck* and *Barres v. Holt, Reinhart & Winston, Inc.*, 131 N.J.Super. 371, 330 A.2d 38 (Law Div. 1974), *aff'd*, 141 N.J.Super. 563, 359 A.2d 501 (App.Div.1976), *aff'd*, 74 N.J. 461, 378

A.2d 1148 (1977), that application of the single publication rule compels the conclusion that plaintiffs' cause of action accrued, at the earliest, when Toy & World disseminated the first article which bears a publication date of September 15, 1986. However, there is an important factual difference between *Zuck* and *Barres* and the case at bar. In both *Zuck* and *Barres,* the defendant was the media publisher and the sole issue before the court was whether publications subsequent to the initial sale extended the statute of limitations:

> ... application of the [single publication] rule [is said] to cut off or "to engross" causes of action for distributions *made by the publisher itself* after the date of original "publication."

*Zuck,* 317 F.2d at 733 (emphasis in original). In the instant case, plaintiffs have not joined the mass media publisher but rather have only sued parties that supplied the allegedly libelous press release. Thus, the issue in this case is when it can be fairly said that *these defendants* "published" a defamatory statement.

"Publication" is defined as the communication of the allegedly libelous statement to a third person with a reasonable ground to suppose that it will become known to others. *See Gnapinsky v. Goldyn,* 23 N.J. 243, 128 A.2d 697 (1957); *Kelly v. Hoffman,* 137 N.J.L. 695 (E. & App.1948). In the case at bar, that event occurred when Monogram and ERTL issued the August 20, 1986 press release. While the *Barres* court does state that an action may be brought within one year of the publication against either the author or the publisher, see *Barres,* 131 N.J.Super. at 386–87, 330 A.2d 38, that statement merely reflects the long-established rule that where an agency relationship exists, a communication from the agent to the principal does not affect a publication because no communication has been made to a third person.

There was no special relationship between Toy & Hobby World and ERTL/Monogram. The issue of the press release itself is clearly a communication to a third person within the legal definition of "publication." In fact, the complaint alleges as

much. See Complaint ¶ 14. ("... statements by ... defendants were published and made available to third parsons [sic], including Toy & Hobby World").

The fact that plaintiffs did not become aware of the statements until shortly thereafter when they were repeated in mass circulation is of no importance. As indicated earlier, the discovery rule does not apply to defamation cases. Thus, I hold as a matter of law that an act of publication was committed by these defendants on August 20, 1986, the day on which the press release was issued. Since there is no material issue of fact regarding that date or the fact that both of these actions were filed after August 20, 1987, any libel action based upon the press release itself is barred by the statute of limitations and defendants are, therefore, entitled to summary judgment. N.J.S.A. 2A:14–3 (West 1987); Fed.R.Civ.P. 56.

■ Alternatively, plaintiffs argue that defendants should be vicariously or contributorily liable for Toy & Hobby World's subsequent republications of the press release. Citing *Moore v. Allied Chemical Corp.*, 480 F.Supp. 364 (E.D.Va.1979), which construes Virginia law, plaintiffs urge this court to hold that a New Jersey court would hold liable "the original publisher ... for the republication of the libelous statement by a third party, when the republication is 'the natural and probable result of what the wrongdoer did.'" *Id.* at 376 (quoting *Weaver v. Beneficial Financial Co.*, 199 Va. 196, 98 S.E.2d 687 (1957)).

In *Moore*, the plaintiff's company, LSP, had entered into an agreement with the defendant Allied Chemical for the plaintiff to produce the toxin Kepone for exclusive sale to Allied. The court's opinion implies that Allied had recognized the toxic nature of the substance and no longer wanted to produce it in its own plants. When a number of LSP employees became ill from the toxin, officials of Allied made statements to CBS News, for use on the "60 Minutes" show, that plaintiff alleged were libelous. When plaintiff filed suit within one year of a rebroadcast of the "60 Minutes" segment, but longer than a year after the original broadcast, Allied raised the defense of the one-year statute of limitations for libel actions. In rejecting the bar of the statute for any republication within the one year period, the court emphasized that Allied had spoken on a subject of intense national concern. Because it was likely that Allied's statements would be raised whenever the "plight of the LSP workers" was discussed, the court held that the republications were the "natural and probable" result of the original publication. *Moore*, 480 F.Supp. at 376. In reaching this conclusion, the court relied exclusively on Virginia Supreme Court of Appeals' decision in *Weaver*.

In *Weaver*, the plaintiff had gratuitously endorsed a note securing a debt owed to the defendant Beneficial Finance Co. by a third party. When the third party defaulted on the note, Beneficial invoked Weaver's promise to pay. Weaver, too, soon defaulted and Beneficial responded by writing Weaver's employer requesting that the employer impress upon Weaver the importance of meeting his financial obligations. Apparently, the letter, written February 23, 1955, was placed in Weaver's personnel file and was not revealed until he was considered for a promotion on March 21, 1956. Defendant argued that the action, filed June 8, 1956, was barred by the one year statute of limitations.

The court disagreed, and first set out what it considered the guiding principles:

It is well settled that the author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication. This is based upon the principle that such republication constitutes a new cause of action against the original author. However, the original author is not responsible if the republication or repetition is not the natural and probable consequence of his act, but is the independent and unauthorized act of a third party.

*Weaver*, 98 S.E.2d at 690. Applying those principles to the facts before it, the court

concluded that Beneficial intended the letter to be brought to the attention of Weaver's superiors. When that intended event occurred, a new cause of action arose. Plaintiffs argue that the *Weaver* and *Moore* decisions are consistent with New Jersey law and should, therefore, apply here to render defendants liable for the intended republication by Toy & Hobby World of their press release. I disagree.

■ First of all, neither of the two decisions have ever been cited by a New Jersey court. Moreover the court's research does not reveal a single instance in which a New Jersey court has spoken of a "natural and probable" republication of defamatory statements within the context of the statute of limitations. Of course, these facts alone do not compel the conclusion that a New Jersey court would not adopt such a rule and I am mindful that a district court should not make too much of the state courts' silence on any particular issue. *Southern Pacific Transportation Co. v. United States,* 462 F.Supp. 1227, 1238 (E.D.Cal.1978). In the absence of any state court decision on point, I must still endeavor to predict how the state's highest court would view the *Moore* and *Weaver* decisions. *See Hardy v. Johns–Manville Sales Corp.,* 509 F.Supp. 1353 (E.D.Tex.1981), *rev'd in part on other grounds,* 681 F.2d 334 (5th Cir.1982). That inquiry, given the dearth of state court authority, must be two-fold: 1) can it be said that the rule in *Moore* is the "majority view" or "emerging trend" so that it can be said that New Jersey would be likely to adopt it and 2) would adoption of the rule in *Moore* be consistent with existing state precedent. Because I cannot make either finding, I am compelled to conclude that the New Jersey Supreme Court would not apply *Moore* to the facts of this case.

First, *Moore* is far from the majority rule. Although its rationale appears to have been adopted in at least two other states, *Davis v. National Broadcasting Co.,* 320 F.Supp. 1070 (E.D.La.1972); *Cobb v. Garlington,* 193 S.W. 463 (Tex.Civ.App. 1917), it has been either implicitly or expressly rejected in at least as many jurisdictions in more recent cases. *See e.g.*

*Davis v. Costa–Gavras,* 580 F.Supp. 1082 (S.D.N.Y.1984) (construing New York law); *Flotech, Inc. v. E.I. DuPont de Nemours Co.,* 627 F.Supp. 358 (D.Mass.1985) (noting *Moore* but rejecting "continuing tort" and "discovery rule" test in press release case). The *Davis* decision is particularly instructive because of its emphasis on the amount of control the original publisher has over the republication. Here, although it certainly appears that defendants wanted the press release republished, there is absolutely no evidence that they had any right to compel Toy & Hobby World to do so. *Davis,* 580 F.Supp. at 1096 (in order to be contributorily liable defendant must have real authority to cause republication).

Second, adoption of the *Moore* and *Weaver* rules in New Jersey would directly contradict strong precedent of long standing. A close examination of the *Weaver* decision reveals that it is essentially a "discovery rule" case. The court was obviously influenced by the fact that the plaintiff had been unaware of the existence of the letter in his personnel file. In fact, the Maryland Court of Appeals, when faced with the opportunity to adopt *Weaver,* found the facts of the case before it to be conducive to an alternative decision based on discovery rule principles. *See Sears, Roebuck and Co. v. Ulman,* 287 Md. 397, 412 A.2d 1240 (1980). Moreover, the dissenting judges in *Weaver* clearly viewed the decision as contrary to Virginia's rejection of the discovery rule. *Weaver,* 98 S.E.2d at 693 ("[w]e are committed in Virginia to the rule that in tort actions the limitation on the right to sue begins to run when the wrong is committed and not when the plaintiff discovers that he has been damaged").

As mentioned earlier, New Jersey has expressly rejected the discovery rule in defamation cases and has done so in a manner that casts great doubt on a conclusion that New Jersey would adopt *Weaver.* In that case, *Lawrence v. Bauer Publishing & Printing Ltd.,* 78 N.J. 371, 396 A.2d 569 (1979) (per curiam opinion adopting dissenting opinion in the Appellate Division), plaintiffs brought a defamation action against a

newspaper that had implied forgery charges might be brought against plaintiffs because of questions concerning signatures on a referendum petition. The paper declined to print a retraction based on its assertion that the information had come from a reliable source within the city administration. Over one year after plaintiffs were put on notice that the source of the article was not affiliated with the newspaper, his identity was revealed and plaintiffs sought to name him as a defendant. The trial court held that since the plaintiffs could have utilized a John Doe procedure, the action against the source accrued when they learned of his existence, not his name.

The Appellate Division reversed over the stinging dissent of Judge Ard. *Id.*, 154 N.J.Super. 271, 381 A.2d 358 (App.Div. 1977). The dissent was subsequently adopted by the Supreme Court with Justice Pashman's concurrence leaving little doubt that the discovery rule did not apply in defamation cases. If the New Jersey Supreme Court was unwilling to allow the deliberate concealment of the source's identity to toll the statute, it is inconceivable to me that it would effectively extend the time period when defendants made every effort to let the world know who they were and what their feelings were. Here, plaintiffs were on notice, within less than a month of the issuance of the press release, by the very wording of the Toy & Hobby World article that defendants had issued a written statement to the press. There is simply no reason, in law or equity, to suggest that plaintiffs did not have the time and ability to investigate the nature of the allegedly defamatory statements, who made them, and when.

In sum, I conclude that because no New Jersey court has even mentioned *Moore, Weaver*, or any similar case, and because the holdings of those cases appear incompatible with expressions of this forum's highest state tribunal, I must decline to follow them as well. To do otherwise would cause this court to impermissibly expand, rather than follow, state law. *See Systems Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131 (3d Cir.1977) (federal court must not determine policy in a manner inconsistent with state law which court is obligated to follow); *Tarr v. Manchester Insurance Corp.*, 544 F.2d 14 (1st Cir.1976) (*Erie* requires federal court to apply state law, not to participate in efforts to change it).

■ Plaintiffs' attempt to characterize its libel count as one for "trade libel" is similarly unavailing. Although a decision of the New Jersey Superior Court, Law Division, has held that an action for trade libel is not governed by the one-year statute of limitations, see *Henry V. Vaccaro Construction Co. v. A.J. DePace, Inc.*, 137 N.J.Super. 512, 349 A.2d 570 (Law Div. 1975), I need not address that issue because this is simply not a case of trade libel. The distinction between defamation on the one hand, and trade libel on the other, was drawn by Justice Garibaldi in her concurring opinion in *Dairy Stores, Inc. Sentinel Publishing Co.*, 104 N.J. 125, 158, 516 A.2d 220 (1986). After first noting *Vaccaro* as a case of "product disparagement," Justice Garibaldi set out the "important" difference between the two torts:

> Product disparagement and defamation are two distinct torts ... Product disparagement protects injured plaintiffs, corporate or individual, by compensating them for pecuniary harm caused by false statements about their products. Defamation protects those plaintiffs' good name and character by compensating them for damage to their reputations ... For example, *if a defendant declares that a company refuses to pay its debts, the reputation of the company will be damaged*, but its ability to sell its product will not be. *The statement is defamatory*, but it does not disparage a product ... In contrast, if a defendant says that a company's product is of poor quality, its sales will be hurt, but public perception of its integrity and its reputation will not be affected. The statement disparages a product, but it is not defamatory.

*Id.* (emphasis added).

■ Justice Garibaldi's distinction is derived directly from Dean Prosser's horn-

book which describes the tort variously as " 'disparagement of property,' 'slander of goods,' 'commercial disparagement,' and, importantly, 'trade libel' " but finally offers the more general term "injurious falsehood" as more descriptive. W. Prosser and W. Keeton, Prosser and Keeton on Torts 963 (5th ed.1984). While admitting to more grey than the black and white Justice Garibaldi's opinion suggests, Prosser draws the same line:

> If the statement charges the plaintiff with personal misconduct, or imputes to him reprehensible personal characteristics, it is regarded as libel or slander ... On the other hand, if the aspersions reflect only upon the quality of what the plaintiff has to sell, or the character of his business as such, it is merely disparagement....

*Id.* at 964. In the case at bar, it is clear that plaintiffs' assert the former and not the latter tort. Paragraphs 12 and 13, in each complaint, are identical except for substitution of the name of the respective plaintiff:

> 12. The [allegedly libelous] statements ... were false and disparaged [Palestri/Kramer] with respect *to his reputation for honesty, integrity[,] and veracity* and specifically disparaged his business *reputation.*

> 13. The [allegedly libelous] statements were intended to state that *[Palestri/Kramer] was dishonest and had engaged in fraudulent and unethical activities.*

Complaints ¶¶ 12 & 13 (emphasis added). On the strength of Justice Garibaldi's concurrence alone, this court can predict with as much certainty as possible that, if faced with this complaint, the Supreme Court of New Jersey would hold that the personal nature of the harm alleged renders this averment as one for defamation and not trade libel. Accordingly, both Count I for libel and Count II for slander are time-barred.[3]

---

**3.** In a post-hearing submission, plaintiffs' counsel argue that plaintiffs are entitled to invoke the tolling provision of N.J.Stat.Ann. 2A:14–22 (West 1987). I disagree. With regard to foreign corporations, this section provides that:

> ... if any corporation ... not organized under the laws of this State, against whom there is [cause of action governed by the one year statute of limitations contained in N.J.Stat. Ann. 2A:14–3], is not represented in this State by any person or officer upon whom summons or other original process may be served, when such cause of action accrues or at any time before the expiration of the times so limited, the times or times during which such ... corporation ... is not so represented within this State shall not be computed as part of the periods of time within which such an action is required to be commenced by the section....
>
> A corporation shall be deemed represented for purposes of this section if the corporation has filed with the Secretary of State a notice designating a representative to accept service of process.

*Id.*

As an initial matter, it is clear that the tolling statute cannot save plaintiff Kramer's cause of action. Title 2A:14–22 applies only to New Jersey residents or any plaintiff whose cause of action accrues in this state. *Govan v. Trade Bank & Trust Co.,* 109 N.J.Super. 271, 276, 263 A.2d 146 (App.Div.1970). As my previous discussion should make clear, the defamatory acts, if any, occurred when defendants issued the press releases in Iowa and Illinois and sent them to Toy & Hobby World in New York. It is in those jurisdictions that the cause of action accrued.

Plaintiffs' reliance on *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed. 2d 790 (1984) is, therefore, misplaced. While *Keeton* certainly stands for the proposition that a cause of action "accrues" wherever a defamatory statement is communicated, and while we may assume that Toy & Hobby World republished the press releases in New Jersey, plaintiffs continue to forget that they have not sued Toy & Hobby World. Plaintiffs' cause of action against *these* defendants exists where *these* defendants communicated defamatory statements, not in the jurisdiction where plaintiff happens to live. Far from being contrary to *Keeton,* such a result is consistent with the Supreme Court's holding in that case. Since Kramer is admittedly not a resident of New Jersey and his cause of action did not accrue here, he is not entitled to the protections of the tolling statute.

Even if that were not so, it is also clear that neither plaintiff is afforded the protection of the statute because neither party has demonstrated that defendants were not amenable to in-state service. The tolling statute, on its face, merely applies to corporations who are "not represented in this State by any person or officer upon whom summons or other original process may be served[.]" N.J.Stat.Ann. 2A:14–22. The inquiry as to who "may be served" to effect service on a corporation is governed by N.J.Ct.R. 4:4–4(c)(1). Under the rule service is effected on a corporation by serving:

either an officer, director, trustee, or managing or general agent; or any person authorized by appointment or by law to receive service of process on behalf of the corporation; or the person at the registered office of the corporation in charge thereof. If service cannot be made upon any of the foregoing, then it may be made upon the person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then upon any servant of the corporation within this State acting in the discharge of his duties. *If it appears by affidavit of plaintiff's attorney or of any person having knowledge of the facts that after diligent inquiry and effort personal service cannot be made by any of the foregoing and if the corporation is a foreign corporation, then, consistent with due process of law, service may be made by mailing....*

*Id.* (emphasis added).

As the comment to the rule makes clear, a plaintiff must first attempt numerous ways of effecting personal service within then state, including a search for officers and "servants ... acting in the discharge of [their] duties." Then, and only then, and only after setting forth by affidavit the diligent efforts made, may a plaintiff serve a defendant pursuant to the long-arm provisions. Here, there can be no doubt that plaintiffs did not follow the procedure set out in N.J.Ct.R. 4:4–4(c)(1). Although plaintiffs utilized the long-arm rule, no affidavit was filed at the time setting forth the inability of plaintiffs to serve the defendants in this state. As defendants note, the point is not to challenge service. The inquiry now is whether or not defendants were represented within the state within the meaning of the tolling statute. However, plaintiffs' failure to file the required affidavit raises a serious question as to whether a diligent inquiry was made at the time.

Of course, now that the sword of Damocles is hanging over his head, Palestri files the appropriate affidavit. A careful analysis of the Dunn affidavit reveals, however, that it is woefully inadequate. According to the affidavit, Palestri's attorney's secretary contacted the state secretary of state and received an oral report that defendants did not have a registered agent. Dunn further searched "telephone directories for New Jersey, but found no listings for any of them." Affidavit of Susan Dunn, ¶ 4. This cursory and simplistic conduct simply does not satisfy the precise language of the tolling statute. As noted earlier, the statute only applies to corporations "not represented in this State by *any* person ... upon whom ... process may be served...." N.J.Stat.Ann. 2A:14–22 (emphasis added). New Jersey Court Rule 4:4–4 makes clear that service on a whole host of persons, including officers and servants transacting business, is good service. Yet Dunn's affidavit makes no attempt to explain how searching through the phone book or calling the secretary of state could have revealed their presence in the state. On the other hand, defendants contend, and plaintiffs do not deny, that Monogram

had a salesman here, and that plaintiffs knew that an ERTL vice-president is resident here. Moreover, it is simply inconceivable that plaintiffs, who had contracted business with defendants in this state and had been sued by them here, were unaware of and could not communicate to their attorneys who might be available for personal service. The fact that these assertions are not contained in affidavits is unimportant. It is plaintiffs' burden to demonstrate that the statute applies by showing that the defendants were not represented here within the meaning of the statute. The failure to file the appropriate affidavit before utilizing long-arm service strongly suggests that plaintiff's did not engage in a diligent attempt to locate in-state persons amenable to service, and Dunn's affidavit does nothing to cure that defect. In short, plaintiffs did not meet their burden then and they have not met it now.

In this regard, this case is, as defendants suggest it is, "on all fours" with *Anastasio v. Holiday Inns, Inc.*, 93 F.R.D. 560, 563 (D.N.J.1982). In that case, as in this case, the plaintiff had relied upon the lack of a "registered agent." The court found such reliance unjustified:

.... That is not what the tolling statute says.

It applies in cases where a foreign corporation 'is not represented in this State....'

Since plaintiff has failed to attempt any showing at all that the moving defendants were not available for service within the State by any of the available modes other than 'long-arm', she has failed to bring the case within the terms of the tolling statute.

*Anastasio,* 93 F.R.D. at 563.

Plaintiffs' attempt to distinguish *Anastasio* by reference to *Coons v. American Honda Motor Co., Inc.,* 96 N.J. 419, 476 A.2d 763 (1984) (*Coons II*) is unpersuasive and represents a misreading of the *Coons II* decision. In *Coons II,* the court dealt with the question of whether or not its decision in *Coons I,* 94 N.J. 307, 463 A.2d 921 (1983), should have had retroactive effect. In framing the issue, the court in *Coons II* restated its holding in *Coons I:*

We ruled that in order to achieve representation under the tolling statute, a corporation not organized in New Jersey *and not represented in this state by any person upon whom process may be served* must obtain a certificate to do business in New Jersey.

*Coons II,* 96 N.J. at 421, 476 A.2d 763 (emphasis added).

The court went on to note that this construction of the statute compelled its conclusion in *Coons I* that the statute violated the commerce clause, as many believed it did. *See G.D. Searle & Co. v. Cohn,* 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982). After the *Coons* decisions, of course, the legislature added the last paragraph of the statute which "deems" notice of a representative to satisfy the statute. As the *Coons* decisions make clear, however, this provision was needed to protect the corporation engaged in interstate commerce, but not otherwise "represented" in the state from forced licensure

*Breach of Contract and Intentional Infliction of Emotional Distress*

Defendants also move for summary judgment on Counts III and IV of the complaints which allege, respectively, intentional infliction of emotional distress and breach of the parties' settlement agreement.

■ The tort of intentional infliction of emotional distress first received recognition as an independent tort in New Jersey in the case of *Hume v. Bayer*, 178 N.J.Super. 310, 428 A.2d 966 (Law Div.1981). The *Hume* decision represents the first time that a New Jersey court recognized the tort of intentional infliction of emotional distress as a separate and independent cause of action. The elements of this tort are set out in the Restatement of Torts (Second) § 46 which states that:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Since the advent of this tort, courts have struggled with the difficulty in defining "outrageous conduct." For the *Hume* court, the defendant's intentional misrepresentation that a child suffered from a fatal illness was so horrible as to "exceed all bounds usually tolerated by decent society...." *Hume*, 178 N.J.Super. at 315, 428 A.2d 966. Other courts have focused on whether the conduct could be characterized as so "atrocious [as to be] ... utterly intolerable in a civilized community." See *Roth v. Golden Nugget Casino/Hotel, Inc.*, 576 F.Supp. 262 (D.N.J.1983) (quoting Restatement of Torts (Second) § 46, comment d).

In the instant case, plaintiffs have failed to offer any evidence, in opposition to defendants' properly supported motion for summary judgment, from which a reasonable juror could conclude a) that the defendants engaged in outrageous conduct and b) that even if they had, plaintiffs have suffered severe emotional distress. At best, viewing the evidence in the light most favorable to plaintiffs, defendants engaged in a cold, calculated effort to defame plaintiffs. That alone is not enough since plaintiffs allege essentially only that defendants' actions were egregious because they were intentional. Although defamation is recognized as a wrong requiring a remedy, knowingly implying a detrimental falsehood, standing alone, does not state a claim for the tort of outrage. *See Schwartz v. United Jersey Bank*, 497 F.Supp. 335 (D.N.J.1980). To hold otherwise would blur the line so thoroughly that the commission of any intentional tort would give rise to a claim for intentional infliction of emotional distress despite the desirability of limiting the tort to "extraordinarily despicable" behavior. *Cautilli v. GAF Corp.*, 531 F.Supp. 71 (E.D.Pa.1982). I am bolstered in my decision by the availability of emotional distress as a measure of damages assuming an underlying tort of defamation. *See* Restatement (Second) of Torts § 623 (1977). Accordingly, I will grant defendants' motion for summary judgment with regard to Count III.

■ Finally, defendants move for summary judgment on plaintiffs' claim of breach of contract. Specifically, plaintiffs allege that the issuance of the press release breached the parties' settlement agreement because it "disclose[d] facts relating to the Agreement" and "undermine[d] the denial of liability by plaintiff." Complaint, Count IV, ¶ 2. As defendants note, plaintiffs do not raise any serious arguments in opposition to this aspect of defendants' motion. Nor would any such arguments be availing. The settlement

---

in violation of the commerce clause. Nothing in *Coons I* or *Coons II*, or in the long history of the *G.D. Searle* case, or in the amendment to the statute, suggests that a defendant which happens to be a foreign corporation but which is otherwise "represented" in the state may not receive the benefit of the statute of limitations merely because it has failed to formally designate a representative. Since neither plaintiff

has shown that defendants were not represented in the state during the time the statute was running, defendants are entitled to its protection.

Finally, because I have disposed of defendants' motion on statute of limitations grounds, I need not, and will not, address defendants' further argument that the allegedly defamatory statements were "true."

agreement between the parties merely prohibited disclosure of the terms of the agreement. Although plaintiffs are correct in noting that defendants publicized something more than the mere fact of settlement and are probably correct in characterizing that publication as a "cheap shot", it does not follow that defendants' embellishments amounted to a breach of the agreement.

Plaintiffs' argument must be that the implication of wrongdoing ascribed to plaintiffs breached the agreement's recognition of plaintiffs' denial of liability. However, plaintiffs' construction of the agreement is tortured. Nothing in the agreement prohibits the parties from expressing their opinions on the history and impact of the lawsuit. Each party was free to characterize the fact of settlement as a victory. In many ways, that fact is what makes settlement an attractive alternative to litigation. If the parties had intended to require each other to remain mute, they could have easily incorporated such a provision. Absent such an express restriction, the only reasonable construction of this contract is that the parties were merely barred from discussing the precise terms of settlement. Whatever implications may have arisen from defendants' conduct may have been tortious, but they do not amount to a breach of contract. Accordingly, I will grant defendants' motion for summary judgment with regard to Count IV as well.[4]

The court will enter an appropriate order.

---

**4.** Because I have dismissed each of the counts of the complaints, I need not, and therefore will not, discuss the merits of defendant ERTL's alternative argument that it was improperly served in the Palestri action.