581 A.2d 839

**Jo Ann SHEPARD**

v.

**Edward H. NABB, et al.**

**No. 83, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 8, 1990.

Jo Ann Shepard, Cambridge, pro se.

John Wheeler Glenn (Preston & Glenn, P.A., on brief, for appellees, Malkus, Brown, Bramble, McGlaughlin and Wheatley), Baltimore, Edward H. Nabb, Jr. (Edward H.

Nabb and Harrington, Harrington & Nabb, on brief), Cambridge, for appellee, Nabb.

Argued before WILNER, BISHOP and FISCHER, JJ.

WILNER, Judge.

Appellant, who is not a lawyer but who comes perilously close to holding herself out as one[1], filed, *pro se*, a four-count complaint against eight defendants in the Circuit Court for Dorchester County. The action stemmed from the efforts of the defendants, which were ultimately successful, to have her removed as a trustee of two testamentary trusts. She sued them for malicious interference with her appointment and tenure as trustee (Count I), defamation (Count II), unlawful harassment (Count III), and civil conspiracy (Count IV). The court ultimately dismissed all four claims, three on the ground that they represented a collateral attack on a prior judgment and one, the defamation claim, because it was time-barred. Continuing *pro se*, appellant has brought this appeal challenging the court's action on a variety of theories. One of them has merit.

At the center of this dispute is Betty Brown, a woman who, though never declared incompetent, is apparently of limited intellectual ability. Betty was the daughter of Levi Brown, Sr. and Virginia Brown and the sister of Levi Brown, Jr. Each of these relatives made provision for Betty through a testamentary trust under which Betty was a lifetime income beneficiary. We are concerned here with the trusts established by Virginia and Levi, Jr. It appears that Levi, Jr. was the trustee named in Virginia's will and that Virginia was the trustee named in Levi Jr.'s will. It also appears that each of those wills provided that, upon the death of the named trustee, Betty could appoint a successor

---

1. On her stationery, appellant lists herself as "A Legal Professional" providing "Legal Support Services" including "Case Preparation," "Complex Litigation," and "Career Development." She appends after her name "J.D."

trustee. Virginia died in March, 1984; Levi, Jr. died in October, 1986.

In May, 1987, at the suggestion of a mutual friend, Betty contacted appellant, whom she did not know before, with respect to appointing successor trustees. Later that month, Betty purported to name appellant as the successor trustee of both trusts. Frederick C. Malkus, Jr. had been appointed as personal representative of Levi, Jr.'s estate and substituted personal representative of Virginia's estate and was then in the process of administering those estates. At some point, Virginia's estate was settled and her testamentary trust became funded and operative. Because of a pending claim in litigation, however, Levi, Jr.'s estate remained open. *See Taxiera v. Malkus*, 320 Md. 471, 578 A.2d 761 (1990).

Almost immediately following appellant's appointment by Betty as successor trustee, disputes arose between appellant, on the one hand, and Malkus and various family members, on the other, over the management of property in Virginia's and Levi, Jr.'s estate. By January, 1988, Betty herself had become disenchanted with appellant's performance, including the high fees she seemed to be charging, and, through her housekeeper, Dorothy McGlaughlin, sought legal advice from Mr. Malkus. Betty asked Malkus to assist her in removing appellant as trustee and discharging the attorneys that appellant had hired to represent the trust. Perceiving a conflict between providing such assistance to Betty and his position as personal representative of Levi, Jr.'s estate, Malkus declined but referred Betty instead to the firm of Harrington, Harrington & Nabb and set up an appointment for her with that firm.

The Harrington firm agreed to represent Betty. Presumably with their assistance, Betty terminated the representation of the attorneys hired by appellant. On Betty's behalf, the firm informed appellant that she was discharged as trustee of the two trusts. When appellant refused to accept the termination, Betty, through the Harrington firm, filed two complaints in the Circuit Court—one for each

trust—in which she asked the court to assume jurisdiction over the two trusts, to remove appellant as trustee, and to appoint successor trustees. The complaints, docketed as Nos. 1839 and 1840, alleged, among other things, that appellant had procured her appointment as trustee by fraud, duress, and undue influence, that she had charged excessive fees, and that in several enumerated respects, she had mismanaged assets and income of the estates and trusts.

The two complaints filed by Betty were set for hearing before Judge H. Chester Goudy on May 26, 1988. Appellant was represented by counsel at that hearing, and, as the first order of business, she filed an amended answer to the complaints in which she not only consented to the relief prayed by Betty but actually joined in requesting it. Though continuing to deny the accusatory allegations of the complaints, she "agree[d] to resign immediately, with such resignation to be effective upon appointment of a substitute trustee or trustees by the Court." As characterized by her attorney, the amended answer "agrees to the prayers for relief with respect to this Court taking jurisdiction of the trust, and [appellant] is here, and she agrees to make a full and complete accounting of the trusts' assets, and agrees to relinquish control of all assets of the estate within ten days."

Counsel for Betty, though not at all disturbed by this concession, nonetheless noted that "[w]e are here to show wrong doing; we have it documented; but if it's the Court's decision not to have us show wrong doing, obviously we will not." To that, the court replied that it "will take notice and does take notice of the file, affidavits in the file, and the Court also takes notice of all the testimony received previously" and that "[b]ased upon the Court's taking notice of the file and the testimony received previously, the Court feels that there is adequate evidence before it for the Court to take jurisdiction ... and the Court will fashion an order

once the Court makes a decision with regard to new trustees."[2]

In orders entered June 8, 1988, the court formally assumed jurisdiction over the two trusts, accepted appellant's resignation as trustee but did not finally approve the resignation pending an accounting, directed her to file an accounting within 10 days, retained jurisdiction over her for that purpose, and appointed successor trustees. Eventually, final judgment was entered in those proceedings.

A month after the entry of the June 8 orders, appellant filed suit against the same defendants sued in this action in the United States District Court for the District of Maryland. The Federal court complaint is not in the record extract, and so we do not know precisely what it contained. It appears from the order of Judge Black disposing of the case, which *is* in the record extract, and from what we are otherwise told in the briefs filed in this appeal that she accused the defendants of violating the Racketeer Influenced and Corrupt Organization (RICO) statute, defamation, and six other torts of one kind or another and that those claims were based "on the same set of facts as this proceeding." On June 5, 1989, the Federal Court entered judgment for all defendants on the RICO claim and dismissed, without prejudice, the other claims.

Appellant thereupon filed this action in the Circuit Court for Dorchester County. In the introductory paragraphs of her Complaint, she alleged her appointment as trustee of the two trusts in May, 1987, and that, in May, 1988, she resigned as trustee "due to the prolonged intentional, malicious, and willful interference by all the defendants with her business rights as a fiduciary." In Count I (Malicious Interference), she alleged that the defendants had publicly

---

2. The nature of the previous testimony referred to by the court is not clear. A number of other proceedings arising out of the conflict between appellant, Malkus, and family members had been filed in the circuit court. The record before us does not reveal the precise status of those other proceedings as of May 26, 1988, including whether any testimony had been taken in them.

challenged the validity of her appointment, frozen fiduciary accounts held by her as trustee, destroyed her fiduciary relationship with Betty, and caused Betty to discharge her.

In Count II, denominated as "Intentional and Malicious Injury to Business Reputation," but effectively a claim of defamation, she incorporated all foregoing allegations and added that "from approximately May 6, 1987 to present," the defendants had "spread throughout the community false statements of wrongdoing and mismanagement by the plaintiff in her capacity as trustee." In particular, she contended that three of the defendants (Edward Nabb, Sr., Edward Nabb, Jr., and the Harrington law firm, of which the Nabbs were partners) had, on May 26, 1988, made false statements to a newspaper reporter regarding the business practices of appellant "with the intent these statements would be and were, in fact, published in the *Daily Banner* on or about May 31, 1989 ... said statements being reprinted in various local newspapers on at least three other occasions."

Count III (Harassment) alleged that the defendants had engaged in a persistent pattern of malicious harassment of her in violation of Md.Ann.Code art. 27, § 121A. Finally, Count IV alleged a civil conspiracy among the defendants based on the foregoing factual averments.

Appellant raised a number of challenges to the court's dismissal of her Complaint. Only one, as we have indicated, has any merit.

### *Counts I, III, and IV*

■ The court dismissed Counts I, III, and IV on the ground that they represented a collateral attack on the judgments entered by the court in Nos. 1839 and 1840 and were therefore precluded by the doctrine enunciated and applied in *Klein v. Whitehead,* 40 Md.App. 1, 389 A.2d 374, *cert. denied,* 283 Md. 734 (1978). Appellant urges that the court misapplied that doctrine because some of the defendants in this action were not parties to the proceedings in

Nos. 1839 and 1840. That does not make the doctrine inapplicable, however, especially as she concedes that the current defendants who were not parties to the earlier proceeding were either instigators of or counsel or likely witnesses in that proceeding. *See Nicholson v. Nicholson,* 113 Ind. 131, 15 N.E. 223 (1888), quoting *Freeman on Judgments* § 289, quoted and relied upon by us in *Klein* at 22–23, 389 A.2d 374. It is evident from the record before us that Counts I, III, and IV do indeed attempt exactly what *Klein* forbids—to seek damages against those persons who were parties, instigators, or witnesses in the earlier actions and who, by achieving the result they desired (albeit through appellant's last-minute capitulation), ultimately prevailed in those actions, for their conduct in bringing and prosecuting the actions. The very complaints made here could have been presented as defenses in those actions; had they been, and had they proven successful, the damage alleged in Counts I, III, and IV of this action would either not have occurred or would have been redressed. We also reject as devoid of merit the other challenges raised by appellant to the judgments entered on these counts.

## *Count II*

▓ The situation with respect to Count II is a bit more complex. Two different grievances seem to be included in it. In ¶ 8 of the Complaint, appellant asserts that all of the defendants "spread throughout the community false statements of wrongdoing and mismanagement by the plaintiff in her capacity as trustee," and that this occurred "from approximately May 6, 1987 to present." In ¶ 9, she complains about particular remarks Mr. Nabb, Sr., Mr. Nabb, Jr. and the Harrington firm allegedly made to a newspaper reporter "on or about May 26, 1988" with the intent that those remarks be published in the *Daily Banner* on May 31, 1988.[3] This action was filed June 12, 1989.

---

**3.** The Complaint, as noted *ante,* actually asserts publication in the *Daily Banner* on May 31, 1989, but the 1989 date appears to be a

The statements complained of in ¶ 8, whatever they may be, were alleged to have been made, at least in part, within the period of limitations. We do not know, of course, from the Complaint, who supposedly said what to whom or when. To the extent that defamatory statements were made after June 12, 1988, however, whatever other defense might be raised to the averments of that paragraph, limitations would not seem to be a proper one, at least upon the record now before us.

The crux of the limitations defense was directed at the averments of ¶ 9, which were somewhat more specific though still lacking in real precision. As noted, though generally accusing three of the defendants of making defamatory statements, it is evident that the only statements actually sued on were those allegedly made by Mr. Nabb, Sr.

The May 31 article in the *Daily Banner* appears to be a report of the hearing before Judge Goudy on May 26 in the actions to remove appellant as trustee. It states, in relevant part, that "Ed Nabb Sr., one of several attorneys in the case, said Miss Brown had asked that [appellant] be removed as trustee because she is charging the estate too much for her services." No statements by any of the other defendants were reported, nor is there any indication in the article that any of the other defendants made any statements concerning appellant.

---

typographical error. In her response to the defendants' motion to dismiss her Complaint, appellant stated that she was prepared to produce documentation that the false statements referred to "appeared in print on May 31, 1988, July 14, 1988, July 15, 1988 and August 4, 1988." The documents actually produced and upon which she relied in defending against the limitations defense indeed establish that the statements she finds offensive were referred to in articles printed on those days. The articles suggest that the reporter merely reported what was said either in the pleadings or in court; the complaint suggests that the statement complained of was made to the reporter in an interview. The circumstances under which the statement was made, if indeed it was made at all, could be relevant in determining whether it is privileged.

The next newspaper publication complained of by appellant was in the *Daily Banner* of July 14, 1988. That article principally concerned an unrelated matter—a paternity action that had been brought against Levi, Jr. posthumously—but in the course of the article, the action to remove appellant as trustee and the hearing of May 26 thereon were mentioned. The article noted that appellant had resigned at the hearing and that Mr. Nabb Sr. *"said at the time* that Miss Brown had asked that [appellant] be removed as trustee because she is charging the estate too much for her services."* (Emphasis added.) The other two newspaper articles complained of by appellant were similar to the story in the July 14 issue of the *Daily Banner,* i.e., they mentioned the hearing of May 26 and repeated what Mr. Nabb had said was the basis of Ms. Brown's complaint. As with the first article, none of these subsequent publications mention or allude to any statements critical of appellant made by any of the other defendants.

### General Rule on Limitations—Discovery

Md.Cts. & Jud.Proc.Code Ann. § 5–105 requires that an action for libel or slander be filed within one year after it accrues. The action as pled in ¶ 9 is not against either of the newspapers that reported the statements attributed to Mr. Nabb, Sr. Indeed, despite the general accusation with respect to Mr. Nabb, Jr. and the law firm, we do not construe it as being against anyone other than Mr. Nabb, Sr. for remarks he made on May 26 that were initially published on May 31.

■ Ordinarily, a cause of action for defamation accrues upon the publication of the defamatory material. *See Miles v. McGrath,* 4 F.Supp. 603 (D.Md.1933); 53 C.J.S. *Libel and Slander* § 122; 54 C.J.S. *Limitations of Actions* § 168. In *Sears, Roebuck & Co. v. Ulman,* 287 Md. 397, 412 A.2d 1240 (1980), the Court modified that principle somewhat by applying the "discovery" rule to defamation actions. The action there was grounded on several reports by Sears to a credit reporting agency, the first of which was in 1975. The

plaintiff claimed that he did not learn of the offending reports until 1978 and that he filed suit well within a year after he discovered them. On those facts, the Court held, at 401, that the action for defamation "accrues when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff." *See also Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981).

 Unlike the situation in *Ulman*, there is nothing in this record to indicate that appellant did not know or reasonably should not have known of Mr. Nabb's remarks to the reporter on or very shortly after May 31, 1988, when they were first referred to in the *Daily Banner* article. There is no allegation in the Complaint and there is no suggestion in any of the other papers filed in the case that she did not then become aware of the article and thus, as well, of the "fact" that Mr. Nabb had made the assertion attributed to him. The "discovery" rule, then, is of no assistance to appellant; she is charged with knowledge of Mr. Nabb's alleged remarks within a day or so after May 31, 1988.

## Tolling

 Appellant raises two other defenses to the plea of limitations. First, she argues that the statute of limitations was tolled, or gratified, because she included a defamation count in her Federal Court action, which was filed within a year after the May publication. We disagree. *Walko Corp. v. Burger Chef*, 281 Md. 207, 378 A.2d 1100 (1977); *compare Bertonazzi v. Hillman, Adm'x*, 241 Md. 361, 216 A.2d 723 (1966), tolling the statute where the only defect in the first action was improper venue.

## Republication

 Her second parry is that the action is saved because of the republication of Mr. Nabb's remarks in July and August—i.e., within a year before the filing of the instant

suit. That is the theory that, under current Maryland law, seems to have merit.

There have been a great many cases throughout the country dealing with whether, and to what extent, a person who makes a defamatory statement to another can be held liable not just for that publication but also for any republication of the statement either by the person to whom the statement was initially made or by others. The consensus seems to be as reported in Annot., *Liability of Publisher of Defamatory Statement for its Repetition or Republication by Others*, 96 A.L.R.2d 373 (1964), namely:

"As a general rule, the author or publisher of a defamatory statement incurs no liability, either as a distinct cause of action or by way of enhancing the damages if the original defamation, for a voluntary and unauthorized repetition or republication of the defamatory matter by others who act independently, and this rule has been applied in actions for slander as well as in actions for libel."

But

"Inherent in the general rule of non-liability is the qualification that if the repetition or republication by others is the natural and probable consequence of the original act of uttering or publishing the libel or slander, the original author will be liable for the damages resulting therefrom. This qualification of limitation of the rule in the case of foreseeability of the repetition has been applied equally in actions for slander and in actions for libel. In such case, it is ordinarily held to be a question for the jury to determine whether the additional circulation given by a third person is a natural consequence of the defendant's act, and the burden is on the plaintiff to show that such exception to the general rule exists."

*Id.* at 376. *See also Restatement (Second) of Torts*

§§ 576(c), 577A[4]; 53 C.J.S. *Libel and Slander* § 54: "[W]here defamatory matter is republished by a person other than the original author, the author is not liable therefor unless the republication is the natural and probable consequence of his own act, or unless he actually or presumptively authorized or ordered its repetition."

The more recent cases hold firm to this view. *See Mitchell v. Superior Court (Synanon Church)*, 37 Cal.3d 268, 208 Cal.Rptr. 152, 160, 690 P.2d 625, 633 (1984); *Ingber v. Ross*, 479 A.2d 1256, 1269 (D.C.App.1984); *Newson v. Henry*, 443 So.2d 817, 821 (Miss.1983); *Hucko v. Jos. Schlitz Brewing Co.*, 100 Wis.2d 372, 302 N.W.2d 68, 72 (App.1981); *Bolduc v. Bailey*, 586 F.Supp. 896, 901 (D.Colo.1984) (applying Kansas law); *Granda–Centeno v. Lara*, 489 So.2d 142, 143 (Fla.App.1986). *See also Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687, 690 (Va.1957).

The Maryland law, we believe, is consistent with this view. In *Coffin v. Brown*, 94 Md. 190, 50 A. 567 (1901), the defendant wrote a letter to the Chairman of the Democratic State Central Committee, complaining about the Governor's appointment of the plaintiff as a supervisor of elections. In the letter, he made a number of defamatory remarks about the plaintiff. The chairman later circulated the defendant's

---

**4.** The Restatement expresses the point somewhat differently. Section 576, entitled "Harm Caused by Repetition," provides, in relevant part, that "[t]he publication of a libel or slander is a legal cause of any special harm resulting from its repetition by a third person if, but only if" the repetition "was authorized or intended by the original defamer" or "the repetition was reasonably to be expected." Section 577A deals with when a dissemination will be regarded as a single or multiple publication. In that regard, Comment d states, in relevant part:

"Thus if the same defamatory statement is published in the morning and evening editions of a newspaper, each edition is a separate single publication and there are two causes of action. The same is true of a rebroadcast of the defamation over radio or television or a second run of a motion picture on the same evening. In these cases the publication reaches a new group and the repetition justifies a new cause of action. The justification for this conclusion usually offered is that in these cases the second publication is intended to and does reach a new group."

letter to other people, and the question arose as to whether evidence of that circulation was admissible. Limitations was not an issue in the case; the evidence of republication was offered in order to show malice and to establish additional damages from the circulation. In that context, the Court seemingly adopted from 18 Ency. of Law (2d ed.) at 1018, the principle that "one who sends or gives a libelous communication to another and thus puts it in circulation is, it has been held, responsible for such subsequent publications as are the natural consequences of his act." 94 Md. at 201, 50 A. 567. The Court further held that, ordinarily, it is for the jury to determine "whether the additional circulation given to the libel by a third person is a natural consequence of the defendant's act." *Id.* It noted, however, that, before that question is to be submitted to the jury, "there ought at least to be some evidence tending to show the circumstances of the republication." *Id.*

Though nearly 90 years old, *Coffin* represents the latest expression from the Court of Appeals on this matter. In *Sears, Roebuck & Co. v. Ulman, supra,* 287 Md. 397, 412 A.2d 1240, the Court accepted as two of the questions certified to it by the United States District Court (1) whether a new and separate cause of action accrues against the publisher of a libelous statement each time a third party republishes the statement if the publisher has "actually or presumptively authorized or directed the republication," and (2) if so, whether the Statute of Limitations begins to run on the date of republication. Because it resolved the case by applying the "discovery" rule to defamation actions, *see ante,* however, the Court found no need to address those questions.

The principle announced in *Coffin* is entirely consistent with the general rule (or, more appropriately, the general exception to the general rule) applied throughout the country, and we have no reason to expect that the Court of Appeals will depart from it. It follows, then, that (1) the republications of Mr. Nabb's alleged remarks could give rise to separate causes of action if those republications

were the natural and probable consequence of the initial publication to the reporter, and (2) whether a republication is a natural and probable consequence of the initial publication is ordinarily a question of fact for resolution by the trier of fact. Although, unlike the situation in *Weaver v. Beneficial Finance Co., supra,* 98 S.E.2d 687, appellant has not expressly based her defamation action on one or more of the alleged republications, she did aver that Mr. Nabb's remarks to the reporter were made with the intent that they be published in the *Daily Banner* on May 31, and a jury could conceivably find that the republication of those remarks in later issues of that newspaper or another one was a natural and probable consequence of the initial remarks to the reporter.

For these reasons, we conclude that the court erred in dismissing Count II on the ground of limitations. It may well be that other grounds exist to dismiss that count on motion; it may well be that, if the issue as to Mr. Nabb's alleged remarks is tried, the jury will conclude that the republications within the period of limitations were not the natural and probable consequence of any remarks made by Mr. Nabb in May, 1988. We simply hold that, on this record, the limitations defense should not have been decided on motion. We therefore shall vacate the judgment entered on that count and remand that part of the case for further proceedings.

JUDGMENTS AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED TO CIRCUIT COURT FOR DORCHESTER COUNTY FOR FURTHER PROCEEDINGS ON COUNT II; COSTS TO BE PAID TWO–THIRDS BY APPELLANT, ONE–THIRD BY APPELLEE EDWARD NABB, SR.