Leonard A. **PELULLO,** Plaintiff,

v.

Henry S. **PATTERSON, II,**
et al., Defendants.

Civ. A. No. 91–4239.

United States District Court,
D. New Jersey.

March 31, 1992.

Barry Richard, Roberts, Baggett, LaFace & Richard, Tallahassee, Fla., for plaintiff.

Benjamin Clarke, Trenton, N.J., for defendants.

## OPINION

WOLIN, District Judge.

Defendant New Jersey State Commission of Investigation ("SCI"), an agency of the

State of New Jersey created by N.J.S.A. § 52:9M–1, has moved to dismiss plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim on which relief may be granted and on the ground that the claims are barred by the applicable statute of limitations. For the reasons set forth below, defendants' motion will be denied in part and granted in part. Plaintiff has cross-moved to amend his complaint. That motion will be granted.

## I. BACKGROUND

On October 3, 1990, plaintiff Leonard A. Pelullo commenced suit in the United States District Court for the Southern District of Florida, seeking relief under 42 U.S.C. § 1983 and state tort law. Defendant moved for transfer of venue to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a). On September 17, 1991, that motion was granted.

Plaintiff has cross-moved to amend his complaint. In the proposed amended complaint, the SCI has been deleted as a party. In its stead, the following persons, all of whom were members of the SCI in December 1985, are named as defendants: Henry S. Patterson, II, William S. Greenberg, James R. Zazzali and Paul Alongi. Because the Court finds that a portion of Pelullo's complaint withstands the motion to dismiss, the motion for leave to amend the complaint will be granted.

The parties have agreed that the sufficiency of plaintiff's claims should be determined on this motion to dismiss based on the allegations in the proposed amended complaint. In his proposed amended complaint, Pelullo alleges the following: On or about December 16, 1985, the defendants caused to be issued a report entitled, "Organized Crime in Boxing–Final Boxing Report of the State of New Jersey Commission on Investigation" ("the Report"). Without his knowledge or opportunity to respond, Pelullo was described in the Report as "a key organized crime associate from Philadelphia, currently based in Florida." Plaintiff claims that this Report was then distributed by the SCI to law enforcement agencies and to news media in various parts of the country, including Florida, where plaintiff resides and conducts business. He states that, due to the allegation of organized crime involvement, his "legal and economic status" has been altered. Plaintiff alleges further that the statement has significantly curtailed his ability to engage in the occupations by which he makes a living, by destroying his "business goodwill."

## II. DISCUSSION

### A. *Plaintiff's Claims*

Pelullo has alleged that the defendants' actions violated his civil rights under 42 U.S.C. § 1983. He has also asserted, based on pendent and diversity jurisdiction, state tort claims arising out of defendants' actions. Specifically, plaintiff claims that defendants' failure to allow him an opportunity to establish the truth or falsity of the statement in the Report before publishing it deprived him of a property right without due process of law.[1] Plaintiff also claims that defendants have defamed him under state law by their publication and distribution of the Report, and are vicariously responsible for the injury caused by third party republication of the defamatory matter.

### B. *Motion to Dismiss Standard*

In considering a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed. R.Civ.P. 12(b)(6), the Court must accept as true all allegations in the complaint, and provide plaintiff with the benefit of all inferences which fairly may be drawn from the complaint. *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir.1989). A complaint cannot be dismissed unless the Court is certain that no set of facts can be proved that would entitle plaintiff to relief. *Id.;*

---

**1.** The Constitution extends procedural safeguards to property interests "that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### C. *Applicable Choice of Law*

■ This case was transferred on defendant's motion to this District from the Southern District of Florida. Following a transfer initiated by a defendant pursuant to 28 U.S.C. § 1404(a), the transferee court must apply the choice of law rules that would have been applied by the transferor court. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).[2] Under *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 498, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), federal courts exercising diversity jurisdiction must apply the choice of law rules of the forum state. This rule applies as well when a court exercises its pendent jurisdiction. *System Operations, Inc. v. Scientific Games Development Corp.,* 555 F.2d 1131, 1136 (3d Cir.1977) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

■ Under *Van Dusen,* this Court must look to Florida's choice of law rules. To determine which state's law governs, both substantively and procedurally,[3] Florida uses the most significant relationships test as set out in the Restatement (Second) of Conflict of Laws and adopted by the Florida Supreme Court. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999 (Fla. 1980); *accord Celotex Corp. v. Meehan,* 523 So.2d 141 (Fla.1988).

The Restatement sets forth the following factors: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile or residence and place of business of the parties; and the place where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145–46 (1971). These contacts are to be evaluated in light of their significance to the issue under discussion. *Bishop,* 389

So.2d at 1001. In *Bishop,* the court stated that the local law of the state where the injury occurred is determinative under most circumstances unless the place of injury has little actual significance for the cause of action. *Id.* See also *Proprietors Insurance Co. v. Valsecchi,* 435 So.2d 290, 294 (Fla.App.1983), *review denied,* 449 So.2d 265 (Fla.1984).

Plaintiff has alleged in his proposed amended complaint that most of the injury occurred in Florida, where he resides, where the bulk of his business dealings occur and, consequently, where his "business goodwill" was allegedly harmed. Although the allegedly defamatory matter in this case was written and printed in New Jersey by employees of a state agency of New Jersey, any injury to plaintiff occurred in Florida, where the Report was circulated and republished by news media. *FirstAmerica Development Corp. v. Daytona Beach News–Journal Corp.,* 196 So.2d 97 (1966) ("A person libeled suffers injury to his reputation ... where the libel has been distributed."); *Stepanian v. Addis,* 782 F.2d 902 (11th Cir.1986) ("under proper circumstances, where a person informs a news reporter, the tort of slander and libel can occur where the allegedly false material is circulated."); *cf. Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) (tort generally deemed to occur wherever the offending material is circulated).

Because Florida is the place of the alleged injury, is plaintiff's state of residence, and is where plaintiff's business interests are located, Florida has the most significant interest in applying its law to this action. Accordingly, the Court will apply Florida law, and rejects any argument by defendants premised on the application of New Jersey law.

### D. *Statute of Limitations*

■ Defendants assert that plaintiff's defamation action is time-barred under

---

2. In *Ferens v. John Deere Co.,* this standard was extended to include transfers initiated by a plaintiff. 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990).

3. *See Bates v. Cook,* 509 So.2d 1112, 1114–15 (Fla.1987) (holding that the significant relationships test should be employed to decide in which state a cause of action arose and to determine whether to apply Florida's statute of limitations or Florida's borrowing statute).

Florida's two-year statute of limitations, and "single publication" rule. The Court only partially agrees.

In Florida, a cause of action for libel must be commenced within two years of the date that the cause of action accrues. Fla.Stat.Ann. § 95.11(4)(g). Therefore, any damage arising from a publication more than two years prior to the filing of plaintiff's complaint may not be recovered. Plaintiff argues that, by distributing copies of its Report within the two-year statutory time period, the SCI had "republished" the Report within the applicable statute of limitations period. Under Florida's "single publication rule," Fla.Stat.Ann. § 770.07, however, defendant's own redistribution of the same Report does not re-commence the two-year statute of limitations period.

■ The purpose behind the single publication rule, as recognized by Florida courts and courts in other states that have adopted a version of the single publication rule, is specifically to avoid the common law rule whereby every publication of a statement by a publisher creates a new and separate cause of action. *FirstAmerica*, 196 So.2d at 101. The single publication rule is intended to protect publishers who print numerous copies of a libelous document that is distributed over a period of time. *Schneider v. United Airlines, Inc.*, 208 Cal.App.3d 71, 256 Cal.Rptr. 71 (1989) (interpreting the Uniform Single Publication Act); *Zuck v. Interstate Publishing Corp.*, 317 F.2d 727 (2d Cir.1963); *see also Kramer v. Monogram Models*, 700 F.Supp. 1348, 135 (D.N.J.1989). The effect of the old rule was to extend the statute of limitations for libel and slander causes of actions indefinitely. *See* 50 Am.Jur.2d, "Libel and Slander" § 153; *see also Barres v. Holt, Rinehart & Winston, Inc.*, 131 N.J.Super. 371, 330 A.2d 38 (Law Div.1974) (citing Prosser, Torts § 113 (4th ed. 1971), *aff'd*, 141 N.J.Super. 563, 359 A.2d 501 (App.Div. 1976), *aff'd*, 74 N.J. 461, 378 A.2d 1148 (1977).

Florida's "single publication" rule states that "the cause of action for damages founded upon a single publication ... shall be deemed to have accrued at the time of the first publication or exhibition or utterance thereof in this state." Fla.Stat.Ann. § 770.07. To define what constitutes a single publication, the statute incorporates Fla.Stat.Ann. § 770.05, which defines a single publication to include "any one edition of a newspaper, book or magazine."

■ The SCI issued only one edition of the Report. Its subsequent distributions of that same Report therefore did not constitute republications under the statute. Accordingly, any redistribution did not extend the statute of limitations, which began to run with the first publication of the Report in December 1985. The claim against defendants for their distribution of copies of the Report is therefore clearly time-barred, having been filed four years after the original publication.

■ Although the original Report and the copies of it distributed by the SCI constitute a single publication, that alone is not dispositive of the claim, because plaintiff also seeks damages for republications by third parties. Under certain circumstances, a publisher can be held liable for subsequent republications of that publication by third parties. *See generally, Kramer v. Monogram Models, Inc.*, 700 F.Supp. 1348 (D.N.J.1988); *Davis v. Costa Gavras*, 580 F.Supp. 1082 (S.D.N.Y.1984); *Moore v. Allied Chemical Corp.*, 480 F.Supp. 364 (E.D.Va.1979). Florida law provides that if a republication was "reasonably foreseeable," the defendant can be held liable. *Granda–Centeno v. Lara*, 489 So.2d 142, 143 n. 3 (Fla. 3d DCA 1986). The question of reasonable foreseeability is a question of fact for the jury. *Id.; accord Shepard v. Nabb*, 84 Md.App. 687, 701, 581 A.2d 839, 846 (1990), *cert. denied*, 322 Md. 240, 587 A.2d 247 (1991).

■ Though plaintiff's claim based on subsequent republications by the media would clearly be viable if the original defamatory Report was published within two years of the filing of the complaint, it is not clear whether, under Florida law, claims are viable when the original publication was made more than two years before the complaint is filed. Neither case cited by

plaintiff addressed the issue whether the statute of limitations is restarted by a republication by a third party. The Court has found no other Florida case ·that addresses this question, and must therefore attempt to predict how Florida's highest court would decide it. *See Kramer v. Monogram Models, Inc.,* 700 F.Supp. 1348, 1353 (D.N.J.1988).

States that have addressed this issue have concluded that republications by third parties give rise to new causes of action. Because republications by third parties are seen as new causes of action, the statute of ·limitations commences to run on the date of that republication. *Davis v. Costa Gavras,* 580 F.Supp. 1082, 1094 (S.D.N.Y.1984); *Moore v. Allied Chemical Corp.,* 480 F.Supp. 364, 376 (E.D.Va.1979); *Shepard,* 84 Md.App. at 700, 581 A.2d at 845–46; *Schneider,* 208 Cal.App.3d 71, 256 Cal. Rptr. 71 (1989).

The Court could find no case from any state that holds to the contrary. Because the defamation and libel law of Florida does not differ substantially from the laws of states recognizing a new cause of action for foreseeable republications by third parties, this Court predicts that Florida courts would follow this prevailing rule.· Consequently, plaintiff's claim for damages is not time-barred to the extent it arises from republications by the news media that occurred within two years of the filing of plaintiff's complaint.[4] Any republication that occurred more than two years before the filing date is time-barred.

E. *Plaintiff's Due Process Claim*

 To establish a legally sufficient claim under 42 U.S.C. § 1983 based on defamation, a plaintiff must allege deprivation without due process of an interest that has been secured to him or her by the 'United States Constitution or the laws of the United States or a state, and that the alleged deprivation was committed by a person acting under color of state law. *Id.; Parratt*

*v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Defendants have not disputed that they were state actors when the SCI issued the report. Hence, this Court need only discuss whether plaintiff has met the first prong of the test.

In *Paul v. Davis,* the United States Supreme Court held that a person's reputation was not a substantive liberty interest created by the United States Constitution, and consequently, that "mere damage to reputation, apart from the impairment of some additional interest previously recognized under state law, is not cognizable under the due process clause." 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976). In the absence of a substantive basis in the Constitution, the protections of the due process clause extend only to those property or liberty interests that have "attain[ed] ... constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Id.* at 710, 96 S.Ct. at 1165.

The Third Circuit has stated that although most ，charges of defamation are accompanied by financial loss, financial harm resulting from government defamation is by itself insufficient to transform a reputation interest into a liberty or property interest. *Sturm v. Clark,* 835 F.2d 1009 (3d Cir.1987); *see also Mosrie v. Barry,* 718 F.2d 1151 (1983). Plaintiff must therefore have alleged the "alteration or extinguishment of some additional interest" other than reputation and financial loss to withstand defendants' motion to dismiss for failure to state a claim. *Paul,* 424 U.S. at 699–703, 96 S.Ct. at 1160–61.

Plaintiff's principle allegation of a constitutionally-protected property interest is his "business goodwill," which he claims was destroyed by defendants without due process of law. Plaintiff argues that Florida law recognizes "business goodwill" as a

---

**4.** Of course, this claim may ultimately ,fail on grounds of privilege. See *Hauser v. Urchisin,* 231 So.2d 6 (Fla.1970); *McNayr v. Kelly,* 184 So.2d 428 (Fla.1966); *Cobb's Auto Sales, Inc. v. Coleman,* 353 So.2d 922 (Fla.Ct.App.1978) (all recognizing absolute privilege of executive offi-cials from defamation claims based on statements made in connection with the performance of official duties). Because the issue has not been placed before the Court, it need not address it at this time.

property interest and relies on the Fifth Circuit decision in *Marrero v. City of Hialeah*, 625 F.2d 499, 514 (5th Cir.1980), *cert. denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). In *Marrero*, the Fifth Circuit, relying on Florida state court decisions, recognized "business goodwill" as a property interest entitled to constitutional protection under Florida law, which could not be taken or diminished by the state without due process of law. *Id.* 625 F.2d at 514. The Eleventh Circuit has subsequently reaffirmed this holding. *See Rivers v. Campbell*, 791 F.2d 837, 840 (11th Cir.1986); *Economic Development Corp. of Dade County v. Stierheim*, 782 F.2d 952, 954–55 (11th Cir.1986) (hereinafter *"EDCO"*); *see also Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316–17 (9th Cir.1989) (recognizing business goodwill as a protected property interest under California law).

*Marrero* does not, as defendants contend, conflict with the recent United States Supreme Court decision in *Siegert v. Gilley*, — U.S. —, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). *Siegert* was a "Bivens" action filed against a federal employee that alleged a deprivation of a constitutionally-protected liberty interest without due process of law. *Id.* 111 S.Ct. at 1792. Both *Siegert* and *Marrero* rely on the "stigma-plus" test from *Paul v. Davis*. In · *Siegert*, the Court found no "plus" because plaintiff had not alleged any deprivation of a constitutionally-protected right. *Siegert*, 111 S.Ct. at 1794. Relying directly on *Paul v. Davis*, the Supreme Court held that the due process clause does not create a "liberty interest" in one's reputation. *Id.* The plaintiff in *Marrero*, by contrast, had alleged the loss of what the Fifth Circuit found to be a constitutionally-protected "property interest" under Florida law. *Marrero*, 625 F.2d at 514 ("Florida has long extended its protection to the intangible interests of a business."). In finding that Marrero had stated a cause of action, the court stated that "[h]ere, at least some of the defamatory statements are alleged to have resulted in injury not only to the

appellant's personal and business reputation, but also to the goodwill of the appellant's business." *Id.* at 515–16.

Though *Marrero* was not affected by *Siegert*, this Court does not believe that the Fifth Circuit correctly interpreted Florida law when it found that business goodwill was a constitutionally-protected property right.[5] For the most part, that Court relied on Florida case law which concerned remedies for business damages available in actions between private parties. These cases are of minimal relevance to the issue of the existence of a constitutional property right in business goodwill. States may and often do create rights under common law for application between private parties that are not of constitutional stature, and which do not constrain the states' own behavior.

The only case cited in *Marrero* that involved state action, thus bearing on the issue of the existence of a constitutionally-protected property right, is *Matthews v. Division of Administration*, 324 So.2d 664 (Fla.Dist.Ct.App.1975), a case involving recovery of damage to business goodwill in eminent domain proceedings. In *Matthews*, the court was required to interpret a Florida statute that expressly allowed businesses which had been in existence for at least five years to recover "business damages" in such proceedings. The court held that "business goodwill" was encompassed within the term "business damages". *Id.* at 666–68. In so doing, however, the court recognized that "[c]ompensation for business damages is entirely a creature of statute." *Id.* at 666.

It is not clear how the Fifth Circuit concluded, from the existence of a statute which narrowly allowed for the recovery in eminent domain proceedings of business goodwill damages by businesses that had been in existence more than five years, that a general constitutional property right exists in business goodwill. Though *Matthews* is arguably susceptible of such a broad holding, controlling precedent of the Florida Supreme Court is directly to the contrary.

**5.** Consequently, the Court also disagrees with this aspect of the Eleventh Circuit's decisions in

*Rivers* and *EDCO*.

In *Jamesson v. Downtown Development Authority*, 322 So.2d 510 (Fla.1975), Florida's high court stated that "[t]he right to business damages is a matter of legislative grace, not constitutional imperative. Lost profits and business damages are intangibles which generally do not constitute 'property' in the constitutional sense." *Id.* at 511. This holding has been reaffirmed on several occasions, most recently in *Texaco, Inc. v. Dept. of Transportation*, 537 So.2d 92, 93 (Fla.1989). Thus, for Pelullo to have a constitutional property right in his business goodwill, there must be Florida legislation that expressly confers such a right. This Court has not been apprised by Pelullo of any Florida statutory authority that in any way protects businesses against defamatory state action that results in a diminution of goodwill. In view of the Florida Supreme Court's repeated determination that business damage, including damage to goodwill, does not rise to the level of constitutionally-protected "property" in the absence of a legislative expression creating such property, the Court must conclude that Pelullo has failed to allege a claim under § 1983.[6]

### III. CONCLUSION :

For the reasons stated above, defendants' motion to dismiss plaintiff's cause of action alleged under § 1983 will be granted, and their motion to dismiss plaintiff's defamation claims will be granted only to the extent that the claims are based on the publication of the SCI Report or republications that occurred more than two years before this action was commenced. Plaintiff's motion for leave to amend his complaint will be granted.

---

**6.** Because the Court has found that Pelullo has no property right to his business goodwill under Florida law, it need not address the thorny problem whether Florida may confer a right on its citizens which constrains the actions of the SCI, as an agency of the state of New Jersey, within its own borders. *Cf. Nevada v. Hall*, 440 U.S. 410, 423–24, 99 S.Ct. 1182, 1190, 59 L.Ed.2d 416 (1979) ("Full faith and credit ... does not enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it") (quoting *Pacific Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939)).