**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

RONALD T. EDWARDS,
Plaintiff-Appellant,

v.

No. 96-2237

CHARLES MICHAEL TOBIN; JOEL S.
ARONSON; STEFANIE SCHWARTZ,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-94-983-AW)

Argued: December 3, 1997

Decided: March 19, 1998

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and
WILSON, Chief United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gary M. Sidell, LAW OFFICE OF GARY M. SIDELL,
Washington, D.C., for Appellant. Shirlie Norris Lake, ECCLESTON
& WOLF, P.C., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ronald T. Edwards ("Edwards") brought this breach of fiduciary duties and malpractice action under the district court's diversity juris-diction against his former attorneys, Charles Tobin and his associates, Joel Aronson and Stefanie Schwartz (collectively "Tobin"). The dis-trict court found insufficient evidence to support the breach of fidu-ciary duties claim. In addition, the court found the malpractice claim barred by collateral estoppel and by the prohibition against collateral attacks on judgments. We agree with the district court that there is insufficient evidence to support Edwards' breach of fiduciary duties claim. We also conclude that the malpractice claim is simply a repackaged, prohibited collateral attack on the judgment of the Mary-land Court of Appeals. Accordingly, we affirm.

I.

In 1978, Edwards joined William Grambling ("Grambling") and Denver Roberts ("Roberts") to market an invention, called an "Au-toswab," designed to extract oil and water from oil wells. After travel-ing below the surface of the oil, this self-propelled device engages a rubber seal designed to trap the natural gas normally present in oil wells. The Autoswab uses the pressure from this gas to force oil to the surface. In 1980, Edwards, Grambling and Roberts formed Gram-bling Engineering Corporation ("GEC") and became the officers, directors and sole shareholders of the new corporation.

Over time, Edwards' relationship with his business associates dete-riorated because of their conflicting visions of GEC's future. Gram-bling and Roberts sought to sell GEC along with its intellectual property. Edwards wanted to further improve the design of the rubber seal, upgrade the method of producing it and continue efforts to mar-ket the Autoswab. GEC had been manufacturing the seal using a

2

single-cavity experimental mold that could produce only one seal at a time. When Grambling rebuffed Edwards' proposal to develop a four-cavity production mold, Edwards financed the project himself in the hope that GEC would reimburse him. GEC eventually used seals manufactured with the four-cavity mold but never repaid Edwards. In 1983, Edwards, in his own name, secretly applied for a patent on the new seal. The patent was granted on July 16, 1995, in Edwards' name.

Intra-corporate conflicts and Edwards' appropriation of the patent and mold inevitably led to litigation. When Grambling refused to honor a demand by Edwards for a statement of corporate affairs, Edwards filed suit against the corporation in the Maryland Circuit Court, Montgomery County. GEC counterclaimed alleging: (1) breach of fiduciary duty ("count I"); (2) tortious interference with a valid business expectancy ("count II"); (3) conversion ("count III"); (4) intentional interference with advantageous contractual arrangements ("count IV"); and (5) defamation ("count V"). GEC sought compensatory and punitive damages, and injunctive relief, including assignment of the seal patent to the corporation. Prior to trial, the court dismissed count IV of the counterclaim and GEC withdrew count V.

Edwards' claim was tried before the circuit court, which dismissed his complaint.[1] The remaining three counts of GEC's counterclaim were tried before a jury. Following the conclusion of the evidence and arguments of counsel, the court submitted the following three questions to the jury:

> (1) Did Ronald Edwards breach his fiduciary duty to Grambling Engineering Corporation?
>
> (2) Did Ronald Edwards tortiously interfere with a valid business expectancy of Grambling Engineering Corporation? . . . .

_____

[1] Prior to trial, GEC provided Edwards with the statement of corporate affairs that he had demanded.

3

(3) Did Ronald Edwards convert corporate property to his own use?

The jury answered "yes" as to question one, but "no" as to questions two and three. As a result, the court dismissed GEC's tortious interference and conversion claims. The court then enjoined Edwards to assign the patent and turn over the four-cavity mold to GEC.

Edwards retained Tobin to prosecute, before the Maryland Court of Appeals, his appeal of the circuit court's injunction. In that appeal, Tobin argued that the injunction was inconsistent with the jury's verdict and that the trial court had entered the injunction without making specific findings of fact.**2** In making these arguments, Tobin, in briefs submitted to the court, on at least one occasion referred to the jury's decision as a "special verdict." He noted, however, that questions existed concerning the appropriate classification of the verdict as a special or a general verdict.

In a published opinion, the Maryland Court of Appeals rejected all of Tobin's arguments and affirmed the district court's remedial order. See Edwards v. Grambling Engineering Corp., 588 A.2d 793 (Md. 1991). The court concluded first that the injunction was consistent with the jury's verdict and second that the trial court did not err when it failed to make findings of fact. The court premised its second conclusion on its characterization of the verdict as a"special verdict." Under Maryland Rule 2-522(c), the court reasoned, the trial court was not required to accompany special verdicts with findings of fact. See Maryland Rule 2-522(c). On other occasions throughout the opinion, the appeals court called the verdict a "special verdict."

Edwards dismissed Tobin, and, with newly retained counsel, filed a Motion for Reconsideration with the Maryland Court of Appeals. Edwards argued that the appeals court, and Tobin, had mischaracterized the verdict. The verdict, he then contended, was a general, rather than special, verdict. The court denied Edwards' motion without comment.

_____

**2** Tobin also unsuccessfully argued that, because federal preemption precluded the trial court from determining entitlement to patents, it lacked jurisdiction to order the assignment of the patent at issue.

4

Prior to his dismissal, Tobin also represented Edwards in a separate proceeding seeking the dissolution of GEC. Edwards' discharged him before the matter was resolved.

Later, Edwards filed this action in the United States District Court for the District of Maryland alleging that Tobin breached his fiduciary duties by "charging [him] unjustified, unearned, inflated and fraudulent fees." In addition, Edwards claimed that Tobin committed legal malpractice before the Maryland Court of Appeals. [3] Tobin moved for summary judgment on both claims. The district court found no evidence supporting the over-billing allegation. The court also concluded that the doctrines of collateral estoppel and collateral attack barred the malpractice claim. Accordingly, the district court granted Tobin's motion for summary judgement.

II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering motions for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); see Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). However, the "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a summary judgment motion. Anderson, 477 U.S. at 252.

The district court, finding "no evidence to support [Edwards' breach of fiduciary duty for over-billing] claim," granted summary judgment in favor of Tobin. Having reviewed the record, we agree with the decision of the district court. Edwards only offered the testimony of one "expert witness" who provided only vague, noncommit-

_____

[3] Edwards' original complaint contained three additional allegations that are not relevant to this appeal. The district court dismissed two of these claims, fraud and racketeering, and Edwards voluntarily dismissed the third, malpractice in connection to the dissolution action.

5

tal, and uninformed speculation about the reasonableness of the fees. Although this expert purported to "sort of give .. . an outside boundary of what [he thought] would be [a] fair and reasonable [fee]," he admitted that he did not know what efforts Tobin undertook during his representation of Edwards and that he based his opinion on his concededly "limited knowledge." This abstract conjecture is not sufficient to establish a triable issue of fact. Finding no other evidence, we conclude that the district court properly granted summary judgment on this claim.

III.

Under Maryland law, a litigant may not attack in a collateral proceeding the judgment of a court having both personal and subject matter jurisdiction. Klein v. Whitehead, 389 A.2d 374, 385-86 (Md. Ct. Spec. App. 1978); see 13 Maryland Law Encyclopedia Judgments § 131 (1961). This prohibition against "collateral attacks" bars "an attempt to impeach the judgment by matters dehors the record, before a court other than the one in which it was rendered, in an action other than that in which it was rendered; an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it." Klein, 289 A.2d at 385 (quoting 49 C.J.S. Judgments§ 408). Unlike estoppel by judgment, which "comes into play when a person seeks . . . to question the effect of [a] judgment, . . .[t]he prohibition against collateral attack . . . prevents a person from challenging the validity of the existing judgment." Id. at 385-86.

Edwards' malpractice action directly contravenes this prohibition against collateral attacks. An essential component of Edwards' claim is his contention that the Maryland Court of Appeals wrongly decided his appeal because it did not understand that the verdict was a general, not special verdict. The appeals court, however, having a complete record before it, concluded that the verdict was a special verdict. Edwards now attempts to end run that decision, contending that the Maryland Court of Appeals would have reached a different legal conclusion if his lawyer had acted differently. Yet, although he alleges that his attorney was negligent, a necessary corollary to Edwards' allegation is that the decision of the Maryland appellate court was wrong.

6

This is no garden variety legal malpractice action. Edwards does not contend that Tobin deprived the appeals court of necessary information to draw its own proper conclusions. Instead, he merely argues that his lawyer's negligence caused the appeals court to misapply the law. This type of impeachment of the correctness or validity of a court's legal judgments or conclusions is exactly the type of collateral attack that Maryland law forbids. See id. at 385-87 (finding that the prohibition against collateral attacks barred action alleging that the defendant's previous, successful suit was wrongfully, tortiously and fraudulently brought). Informed decisions of the courts "must be regarded as final, a concept which itself emanates from, and is required by, the societal need for certainty in the law." Id. at 381. This principle holds true whether the attack is couched as an action against a prior litigant, see id. at 385-87, an action against a prior litigant's counsel, see Shepard v. Nabb, 581 A.2d 839, 842 (Md. Ct. Spec. App. 1990), or an action against one's own prior attorney. Accordingly, we find that Edwards' malpractice action is barred. **4**

IV.

For the reasons stated above, the decision of the district court is affirmed.

<u>AFFIRMED</u>

_____

**4** Because the doctrine of collateral attack bars Edwards' malpractice claim, we need not decide whether the doctrine of collateral estoppel also bars it.

7